**FILED**

Jul 06 2021

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ franciscoh        DEPUTY

Anton Ewing (not an attorney)
3077 B Clairemont Drive #372
San Diego, CA 92117
(do not call)

Plaintiff In *Pro Per*

# THE UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Anton Ewing, | Civil Case No.  '21 CV1219 WQHJLB |
| Plaintiff, | |
| vs. | 1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C §227 (b)] |
| Yaso Cupina, an individual, *Also known as* Jason Cupina, *Also known as* Jay Cupina, *Also known as* Jasminkacu Cupina; *Also known as* Jaso Cupina, *Doing business as* Azul Destinations, an unknown entity; | 2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)] |
| | 3. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 (c)] |
| Reservation Services Group, LLC, a Florida LLC; | 4. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)] |
| RSI Affinity, LLC, a Nevada LLC; | 5. CIVIL CODE §1770(a)(22)(A) |
| Legacy II Consulting Partners, LLC, a California limited liability company, | 6. ASSAULT |
| | 7. BATTERY |
| Defendants. | 8. FALSE IMPRISONMENT |
| | JURY TRIAL REQUESTED |

PLAINTIFF'S INITIAL COMPLAINT- 1

Plaintiff Anton Ewing ("Plaintiff"), an individual, alleges the following based upon personal direct knowledge:

## I.  NATURE OF THE CASE

1.     Defendant Cupina operates a vacation club/timeshare scam[1] out of his office at 1111 Sixth Avenue, Suite 304, in San Diego, California.  It does not appear that even he knows the name of his own company because sometimes he refers to it as "Dream Destinations" and other times he calls it "Azul Destinations" and still at other times he calls it "Legacy II Consulting" or even "RSI."  This evasiveness is part of his *modus operandi*.  *See also* Cal.Civ.Code §3294.

2.     On July 3, 2021, Defendant Yaso Cupina (aka Jason Cupina, aka Jay Cupina, aka Jasminkacu Cupina, aka Jaso Cupina)[2] physically punched Plaintiff in the face at 1111 Sixth Avenue, Suite 304, in San Diego, California.  This constitutes assault and battery.  Plaintiff is suing Defendant Cupina for assault and battery.  *See also* Cal.Civ.Code §3294.

3.     On July 3, 2021, Yaso Cupina physically blocked Plaintiff from attempting to leave by getting into the elevator at the above stated address to exit the premises

---

[1] For example, Cupina states that his club buys Airbnb blocks of time in bulk and gets a huge discount.  But that is not how Airbnb works.  The Coachella Water Authority sued Cupina in 2017 and obtained an injunction against him for making similarly outrageous claims in Riverside Superior Court case number PSC 1700901.

[2] He uses several different names, again, his MO is evasiveness.

and Cupina stated "you cannot leave, the doors are locked. You have not stayed the required 90 minutes for the presentation." This constitutes false imprisonment. *See also* Cal.Civ.Code §3294. Cupina kept shouting "you cannot leave." Cupina placed his hands on each side of the elevator entrance and stood in front of the elevator with his body[3] blocking the exit while shouting "you cannot leave."

4.      As the elevator was finally closing, Yaso Cupina shouted "I am going to kill you" and then, mere hours later, Cupina sent a threatening email to Plaintiff stating that he was an "Israeli-Russian" and that there will be "...consequences which you're not able to comprehend yet, so I'll give you 24 hours to respond...." Cupina, in violation of PC §519 and §523, stated, in writing at 9:04 PM on July 3, 2021 (from yasocupina@gmail.com), that he was going to call the "...police on you and they will be calling you. You're going to jail..." unless Plaintiff stop this lawsuit. Plaintiff, respectfully declines Cupina's extortionate threat, invites him to go ahead and kill Plaintiff and call the police, because this lawsuit is now filed. *See also* Cal.Civ.Code §3294. Plaintiff will not let this bully get away with his felonious acts that were all recorded on video.

5.      If Cupina thinks that his status as an "Israeli-Russian" or his threat to call the police or his threat to kill Plaintiff is going to stop Plaintiff from suing Cupina for

---

[3] Cupina is well over six feet tall Russian male approximately 230 lbs.

21cv

illegal telemarketing, false imprisonment, assault, battery, illegal recording, and invasion of privacy as well as unfair business practices, then he is simply misguided and confused.

6.      There is a video camera recording that proves the above allegations.  The Court and the jury do not have to believe Plaintiff regarding these allegations.  The video speaks for itself.  The jury will be able to hear and see the entire incident for themselves and then decide this case.  A jury trial has been requested.

7.      Defendant Yaso Cupina, through his entities, Reservation Services Group, LLC, a Florida LLC,  RSI Affinity, LLC, a Nevada limited liability company and Legacy II Consulting Partners, LLC, a California limited liability company, made telemarketing calls to Plaintiff's DNC registered cell phone, with an ATDS at 6:33 PM on 7/1/2021 from phone number 619-755-1841 to cell phone 619-719-9640 stating, initially through a pre-recorded robotic voice that required Plaintiff to "press 1" to get to a live human operator.  It is this call that set up the appointment so that Plaintiff could find out who the offending telemarketer was.

8.      There was a distinct bubble popping sound at the beginning of the above call.

9.      Cupina also called Plaintiff at 7:45PM on 7/1/2021 from 760-641-9279.

10.      Cupina called Plaintiff at 1:44 PM on 7/1/2021 from 619-719-5194.

11.      Cupina called Plaintiff at 12:52 PM on 7/1/2021 from 559-366-9724.

21cv

12.     Cupina called Plaintiff at 10:10 AM on 7/1/2021 from 928-398-3946.

13.     Cupina called Plaintiff at 3:30 PM on 6/30/2021 from 619-719-1974.

14.     Cupina called Plaintiff at 9:18 AM on 6/29/2021 from 618-434-8395.

15.     It appears that Defendant Cupina is continuously spoofing his caller ID in order to evade detection and tracing. *See also* STIR/SHAKEN effective 7/1/2021.

16.     The recorded voice (i.e. the pre-recorded artificial voice) said "This is Sam calling from Embassy Suites with a free, no obligation travel voucher."

17.     It was not actually "Embassy Suites" as that was just what the recording stated in order to get victims to think they are a legitimate company initially and press "1" to be connected.

18.     Because this is a cell phone case, the <u>landline</u> rules under PC §632, which require <u>confidential information</u> to be exchanged, does not require confidential information to have been exchanged because no hard-wired <u>landline</u> phone was used by Plaintiff and only a <u>cellular</u> phone was used.  Only PC §632.7 and §637.2 apply in this matter.  PC §632 does not apply because this is not a "<u>landline</u>" case.  That being said, Plaintiff uses his <u>cellular</u> phone for personal, residential, private family use.  PC §632 only applies to <u>landlines</u> while PC §637.2 only applies to <u>cellular</u> phones.

19.     The exception to illegal recording under PC §633.5 does not protect or apply to Defendants in this case.  Defendant Cupina called Plaintiff; Plaintiff did not call

Cupina.  Cupina made harassing and seriously annoying calls to Plaintiff.

20.     47 USC §227(b)(1)(A), which was violated by Cupina, in not one but two

separate and distinct matters: (1) by using an ATDS and (2) by using an artificial

pre-recorded voice.  If the Court finds that an ATDS was not properly plead and

proven, then a violation of §227(b)(1)(A) still occurred because the use of a pre-

recorded artificial voice does not require the use of an ATDS.  The fact that Cupina

used a pre-recorded message is a violation in and of itself.  It does not matter if an

ATDS was or was not used.  If the Court finds that there was no ATDS, it does not

affect or effect the outcome of this case.

21.     Moreover, because Cupina called a number (619-719-9640) that was

registered by Plaintiff more than 31 days prior to the first offending call, on

www.donotcall.gov,  with the FTC, then Cupina has violated 47 USC §227(c)(5).

*See also* 47 C.F.R. §64.1200(c)(2).  The Court does not need to find a violation of

the ATDS rules to find a violation of the DNC registry rules.  These code sections

within the TCPA are two separate and distinct violations.

22.     This is the confirmation of the registration sent directly from the FTC from

verify@donotcall.gov:

"*Thank you for registering your phone number with the National Do Not Call*

*Registry.  You successfully registered your phone number ending in 9640 on*

*February 16, 2012. Most telemarketers will be required to stop calling you 31 days*

*from your registration date.*"  Plaintiff registered his cell phone nearly a decade ago.

23.     47 C.F.R. §64.1200(c)(2)(ii) requires the phone number to be listed in any consent agreement and signed by the person being called.  Cupina has no such consent from Plaintiff.  Plaintiff has never consented to be solicited by telephone by Cupina or any of this hired and controlled employees.

24.     Plaintiff has taken extra ordinary steps to give notice to the world that his phone number is not to be called for solicitation purposes.  A simple Google search of Plaintiff's phone number yields ample proof of this.  The Court is encouraged to Google search both "6197199640" and "(619) 719-9640)."

25.     Yaso Cupina sent Plaintiff an email from resortscenter@americasawardcenter.com at 6:44 PM on July 1, 2021, with a pdf attachment that contained the phone number 760-641-9279.  This phone number, 760-641-9279, is the same phone number that Yaso Cupina listed on his Chapter 7 bankruptcy petition filed as case number 09-BK-21838-MJ on June 1, 2009 in the Central District of California.  *See* page 3 of 53 in 6:09bk21838.  Yaso Cupina is a properly named defendant in this matter.

26.     California Civil Code §1770(a)(22)(A) provides that the treble damage award of $1500 for willful violation of the TCPA is again tripled under this state law.  Thus each call is tripled in its §227(b)(1)(A) violation from $1500 to $4500

21cv

and each §227(c)(5) violation is tripled from $1500 to $4500.  Thus, because

Cupina used a pre-recorded message and called a DNC registered phone, and did

all of that willfully, then he is subject to $9,000 in damage violations per call.

Further, the PC §637.2 and §632.7 recording violation for $5000 is tripled under

§1770(a)(22)(A) to $15,000.  *See* Civ. Code §1780(a) regarding punitive damages.

Thus each call made by Cupina carries a $9000 violation under the TCPA and

$15000 under CIPA for a total of $24,000 per call.  This is the law in California

pursuant to the Consumer Legal Remedies Act.  Civil Code §1760 requires the

Court to both liberally construe and liberally apply the CLRA.  There will be 52

billion robo-calls made to Americans this year.  The Court is the only branch of

government that can do anything about this problem.  The US DOJ does not

prosecute TCPA violations.  H.R. 3810, if passed, will make TCPA violations

felonies, and then the DOJ might take notice.  The FCC[4] and FTC do nothing to

enforce the TCPA or stop these 52 billion[5] telemarketing robocalls that we have to

---

[4] https://www.khou.com/article/news/investigations/robocall-fine-history/285-777762bc-429c-4e72-b695-59aeee1b479d

[5] https://www.cnet.com/news/robocalls-are-out-of-control-but-that-could-all-change-today/
https://www.prnewswire.com/news-releases/just-under-4-billion-robocalls-in-may-mark-9-9-monthly-drop-says-youmail-robocall-index-301305216.html

21cv

suffer from.  Local police are powerless to enforce the TCPA.  *See also*

Cal.Civ.Code §3294.

27.    The impersonal and generic nature of Defendant's pre-recorded message

demonstrates that Defendant Cupina utilized an ATDS in transmitting the

messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S.

Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined

with the generic, impersonal nature of the text message advertisements and the use

of a short code, support an inference that the text messages were sent using an

ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D.

Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using

ATDS; use of a short code and volume of mass messaging alleged would be

impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d

1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS

where messages were advertisements written in an impersonal manner and sent

from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; Robbins v.

Coca-Cola Co., No. 13- CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013

WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging

would be impracticable without use of an ATDS)).

28.    An Automatic Telephone Dialing System, which the statute defines as

"equipment which has the capacity—(A) to store or produce telephone numbers to

21cv

be called, using a random or sequential number generator; and (B) to dial such numbers is listed at 47 USC §227(a). *Facebook, Inc vs. Duguid* ends its recent US Supreme Court opinion by stating "We hold that a necessary feature of an autodialer under §227(a)(1)(A) is the capacity to use a random or sequential number generator to… store… phone numbers to be called."

29.     Previously, the 9th Circuit in *Marks* held that if the dialer dials numbers from a stored list, it is considered an ATDS.  Now, Plaintiff must prove the equipment could have done it that way (i.e., the equipment had the capability to randomly or sequentially store or produce numbers.).

30.     The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 USC §227(c)(1).

31.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems…)" and "develop proposed regulation to implement the methods and procedure that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

32.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules that every company engaging in telemarketing is required to

21cv

comply with. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Red. 8752 (Oct. 16, 1992)("TCPA Implementation Order"). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears the ultimate responsibility for any violations."

33.     The FCC confirmed the principle in 2013, when it explained that "a seller... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Red. 6574 (2013).

34.     The Defendants named in this matter are jointly and severally liable because they jointly and severally placed the telemarketing calls. Further they each coordinated and conspired with each other to plan the wording of the written contract that is attached as an exhibit and how they would go about creating the pre-recorded messages and which an automatic dialing machine they would use to carry out the harassing telemarketing campaign.

35.     Plaintiff brings this action seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Cupina and his related entities named herein as co-defendants, in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone

21cv

Consumer Protection Act, 47. U.S.C. § 227 et seq. ("TCPA") and related regulations, specifically the National Do-Not-Call provisions, thereby invading Plaintiff's privacy. This case involves more than one call in violation of the TCPA.

## II.  JURISDICTION & VENUE

36.    Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of California, seeks relief from the United States Federal District Court, Southern District of California.  For each TCPA subsection (b and c), Plaintiff also seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when all calls are added up, exceeds the threshold required for federal court jurisdiction.  This; however, is not a diversity case.  This is a federal question case.

37.    The Court has ancillary jurisdiction, in its discretion, over the attendant state law claims.

38.    This Court also has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

39.    This Court has personal jurisdiction over Defendant Cupina because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, Cupina, through his entities as stated above, made illegal telemarketing robocalls to Mr. Ewing, within area code 619, while he was in

21cv

California.   Cupina has also subjected itself to personal jurisdiction in California because they are running and abetting said criminal operation.

40.     Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) and because Defendant Cupina does business within the State of California and Plaintiff resides within the County of San Diego.

41.     Defendant Cupina has purposefully directed its activities into California and has thus enjoyed the benefits and protections of California law.

42.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS"); and (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

43.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

44.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

45.     The Federal Communications Commission ("FCC") is empowered to issue

rules and regulations implementing the TCPA. According to the FCC's findings,

calls in violation of the TCPA are prohibited because, as Congress found,

automated or prerecorded telephone calls are a greater nuisance and invasion of

privacy than live solicitation calls, and such calls can be costly and inconvenient.

46.     The FCC also recognized that wireless customers are charged for incoming

calls whether they pay in advance or after the minutes are used. *Rules and*

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG

Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

47.     In 2012, the FCC issued an order tightening the restrictions for automated

telemarketing calls, requiring "prior express written consent" for such calls to

wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel.*

*Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)

(emphasis supplied).

48.     To obtain express written consent for telemarketing calls, a defendant must

establish that it secured the plaintiff's signature in a form that gives the plaintiff a

"'clear and conspicuous disclosure' of the consequences of providing the requested

consent....and having received this information, agrees unambiguously to receive

such calls at a telephone number the [plaintiff] designates." *In re Rules &*

*Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830,

1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

21cv

49.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

50.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

51.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

52.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients

are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

53.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

54.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

55.    Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

56.    As recently held by the United States Court of Appeals for the Ninth Circuit:

"Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

### III. PARTIES

57.     Plaintiff, Anton Ewing. ("Plaintiff"), is an individual and resident in California.

58.     Defendant Cupina is a vociferous robo-dialing telemarketer, and is a "person" as defined by 47 U.S.C. § 153 (39).

59.     RSI Affinity, LLC and the other two LLC's named herein are a "person" as defined by 47 U.S.C. § 153 (39).

60.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.  Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.  Defendants controlled every aspect of its agent's operations including the scripts to be read on

21cv

each call and the fact that Defendant Cupina required its agent to record each

telemarketing call.  Cupina is and was, at all times relevant to this action, a

knowingly and intentionally authorized and controlled agent of RSI Affinity, LLC

and Reservation Services Group, LLC.

## VI.  ADDITIONAL FACTUAL ALLEGATIONS

61.    Cupina admitted on the phone that he did not have permission or consent to

robodial Plaintiff prior to calling.

62.    Defendant Cupina is being sued for violating 47 USC §227(b)(1)(A), 47

USC §227(c)(5), California Civil Code[6] §1770(a)(22)(A).

63.    Yaso Cupina is an officer of Defendants RSI Affinity, LLC, Reservation

Services Group, LLC and Legacy II Partners Consulting, LLC.

64.    Yaso Cupina is an owner of Defendants RSI Affinity, LLC, Reservation

Services Group, LLC and Legacy II Partners Consulting, LLC.

65.    Cupina voluntarily handed Plaintiff a written contract which states, in part:

"Licensor has contracted with Reservation Services Group, LLC and RSI Affinity,

LLC (collectively d/b/a RSI Vacations, "Network Administrator") to administer

---

[6] Disseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first

informing the person answering the telephone of the name of the caller or the organization being represented, and

either the address or the telephone number of the caller, and without obtaining the consent of that person to listen to

the prerecorded message.

the Network and provide/fulfill the Network Benefits."

66.     Anton Ewing owns, answers and controls cell phone number ending in -9640.

67.     Defendant has failed to obtain a bond as required of all telemarketing organizations in California.

68.     Cupina is illegally doing business in California.  His timeshare/vacation clubs presentation is riddled with material false statements of alleged fact.

69.     Cupina has failed to register as a telemarketer in California with the California Department of Justice.

70.     Defendant Cupina has failed to obtain a telemarketers bond in California as required by the California Department of Justice.

71.     Cupina exerts agency type control over their third party lead source for telemarketing leads.  Cupina provides the script and exact instructions that must be followed.

72.     Upon information and belief, Cupina requires its lead source to ask certain questions of the prospective clients before the lead source can transfer the call to Cupina employees.

73.     Upon information and belief, Cupina began harassing Plaintiff on or about June 28, 2021 at which time Plaintiff expressly told Defendant Cupina to stop calling and to send a written copy of its Do Not Call policy.   No Defendant has yet

sent a written copy of the do not call policy.

74.    Calling Plaintiff's cell phone in California prior to 8:00 AM is a violation of the FTC and FCC regulations and therefore a violation of 47 USC §227(c)(5).

75.    Plaintiff did not consent to, nor give permission for, the subsequent calls made by Defendant Cupina to Plaintiff.

76.    Often telemarketers higher controlled third parties to do their initial illegal calling in violation of the TCPA.  The initial lead source always plays coy and will not divulge who they are or who they are working for.  That in and of itself is a violation of the FCC's Telemarketing Sales Rule and actionable under 47 USC §227(c)(5).

77.    Further, consent must be in writing and signed by the person called. Plaintiff did not sign any consent to be called.

78.    The Honorable District Judge Chad F. Kenney stated on May 1, 2019 in case number 18-cv-02071, *Shelton vs. Fast Advance Funding, LLC*: "Well, the only way this, this act is going to get any teeth in it at all is through a serial litigant."

79.    Judge Kenney was referring to the TCPA when he made this above statement on the record.

80.    Yaso Cupina directly called Plaintiff on his DNC registered cell phone in violation of the TCPA.

81.    The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter*

*alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the use of an ATDS is expressly alleged against Defendant Cupina.

82.     Yaso Cupina is the agent of Reservation Services Group, LLC and Yaso Cupina controls the acts and actions of Reservation Services Group, LLC as his alter ego.

83.     Defendant Cupina used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its calls to Plaintiff  seeking to solicit its vacation club/timeshare services.

84.     Defendant Cupina contacted or attempted to contact Plaintiff from telephone numbers confirmed to be Defendant's numbers.

85.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

86.     During all relevant times, Defendant Cupina did not possess Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an automatic telephone dialing system or an artificial or prerecorded voice on its cellular telephone pursuant to 47 U.S.C.§227(b)(1)(A).  At no time did Plaintiff provide, give or grant express written permission to be called nor to be robo-dialed by Defendants or its agents.

87.     Further, Plaintiff's cellular telephone number ending in -9640 was added to the National Do-Not-Call Registry on or about February 16, 2012.

88.     Defendants placed multiple calls soliciting its business to Plaintiff on his cellular telephone ending in -9640 in or around June and July 2021.   Plaintiff has experienced this same type and method of telephone calls many times over the past six months.  Only discovery and depositions will force Defendant Cupina and RSI to turn over the evidence confirming that each vacation club scam call is actually from the Defendants.

89.     Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's services.

90.     Plaintiff received numerous solicitation calls from Defendants within a 12-month period.

91.     Defendants continued to call Plaintiff on its telephone number -9640 in an attempt to solicit its services and in violation of the National Do-Not-Call provisions of the TCPA.

92.     Plaintiff was harmed by the acts of Defendants in at least the following ways: Defendants illegally contacted Plaintiff via his telephone for solicitation purposes, thereby invading the privacy of said Plaintiff whose telephone number was on the National Do-Not-Call Registry. Plaintiff was damaged thereby.

93.     Plaintiff is suing as a person that received numerous solicitation calls from Defendants within a 12-month period, who had not granted Defendants prior express consent and did not have an established business relationship with

21cv

Defendants.

94.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

95.     The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

96.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

97.     The term ATDS[7] as used and mentioned herein is as defined by the TCPA and by the 9th Circuit Court of Appeals in the recent *Marks vs. Crunch San Diego, LLC* case.  D.C. No 14-cv-00348 BAS BLM, as modified, in part, by the US Supreme Court in *Facebook*.  Per *Facebook vs. Duguid* "we hold that a necessary feature of an autodialer under §227(a)(1)(A) is the capacity to use a random or sequential number generator to… store… phone numbers to be called."  Plaintiff alleges even if the phone numbers themselves aren't random or sequential (which isn't required because "random or sequential" modifies the verbs store/produce,

---

[7] "we conclude that the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator."

and not "telephone numbers to be called," *See* also *Gadelhak*), as long as there is some function of a random or sequential number generator being employed by the dialing system, it can still quality as an ATDS, just like SCOTUS mentioned in footnote 7.

98.　The court says that autodialers include systems that use random or sequential number generators to order numbers in a list.  Computer programs commonly use sequential number generators to store or pull information from a list, thus it is hard to think of a mass dialing system that would not use a sequential number generator at some point in the program.

99.　Plaintiff alleges that the calls were made with an auto dialer because Plaintiff pleads that the messages were sent *en masse* and there was a distinct bubble popping sound at the beginning of each call.

100.　The TCPA is part of the Communication Act of 1934, as amended, and the Communications Act contains a respondent superior provision.  See 47 USC §217, "the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person."  This provision applies when "construing and enforcing the provisions of the Communications Act."  *Reynolds Corp. vs. National Operator Services, Inc*, 73 F.Supp.2nd 299, 305 (WDNY 1999).

21cv

# V. STANDING

101.    The court must evaluate lack of statutory standing under the Rule 12(b)(6)

standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However,

because Plaintiff is proceeding pro se, his complaint "must be held to less stringent

standards than formal pleadings drafted by lawyers" and must be "liberally

construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming

standard for pro se complaints post-*Twombly*). The Ninth Circuit has concluded

that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same

and *pro se* pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627

F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42

(7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010);

*Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following

*Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint

liberally").

102.    Standing is proper under Article III of the Constitution of the United States

of America because Plaintiff's claims state:

       -A valid injury in fact;

       -which is traceable to the conduct of Defendants;

       -and is likely to be redressed by a favorable judicial decision.  See, *Spokeo,*

*Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504

U.S. 555 at 560. In order to meet the standard laid out in *Spokeo* and *Lujan*,

plaintiffs must clearly allege facts demonstrating all three prongs above.

### The "Injury in Fact" Prong

103. Plaintiff's injury in fact, must be both "concrete" and "particularized" in

order to satisfy the requirements of Article III of the Constitution, as laid out in

*Spokeo (*Id.). For an injury to be "concrete," it must be a de facto injury, meaning

that it actually exists. In the present case, Plaintiff was called on his cellular phone

at least seven times by Defendants. In fact, Plaintiff expressly informed Defendant

Cupina to cease and desist from all future telemarketing on the very first call.

Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in

multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir.

2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated

by the fact that Plaintiff's phone number, at all times relevant to this litigation, was

on the National Do-Not-Call Registry ( hereinafter, "DNC Registry"). As well,

Plaintiff had no prior business relationship with any named Defendant prior to

receiving the seriously harassing and annoying calls by Cupina. All of Plaintiff's

injuries are concrete and de facto. For an injury to be "particularized" means that

the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc.*

*v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14. In the instant case, it was

Plaintiff's phone that was called and it was Plaintiff who answered the calls. It

21cv

was Plaintiff's personal privacy and peace that was invaded by both Defendant's

persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff

having no prior business relationship with any named Defendant and Plaintiff's

attempt to avoid the damage by registering his number on the DNC Registry.

### The "Traceable to the Conduct of Defendant" Prong

104.   The second prong required to establish standing at the pleadings phase is

that Plaintiff must allege facts to show that their injury is traceable to the conduct

of Defendant Cupina.  In the instant case, this prong is met by the fact that the calls

to Plaintiff's cellular phone and home phone (land line) were placed either by

Defendant Cupina directly, or by Defendant Cupina's agent at the express direction

and control of Defendant Cupina.   See *Jones v. Royal Admin. Servs., 866 F.3d

1100 (9th Cir. 2017)* ten factor test from the 9th Circuit and Civil code §2307.

### The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong

105.   The third prong to establish standing at the pleadings phase requires Plaintiff

to allege facts to show that the injury is likely to be redressed by a favorable

judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a

request for damages for each call made by Defendants, as authorized by statute in

47 U.S.C. § 227. The statutory damages were set by Congress and specifically

redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's

Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendants on the stated claims. Reservation Services Group, LLC, RSI Affinity, LLC and Legacy II Consulting Partners, LLC are all vicariously liable for the acts and actions of Cupina and his employees.

106. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560). The Supreme Court noted that concreteness is quite distinct from particularization. *Id*. An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id*. In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id*. However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id*. at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id*. at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has

traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v. Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

107. Here, Plaintiff alleges that Defendant Cupina contacted him using a "telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, one of the calls is available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are solicitation advertisements: they advertise Defendant RSI Affinity's services for which Plaintiff has absolutely not use or interest. Third, Plaintiff declares that he has never heard of Defendant Cupina, visited any location operated by said Defendant prior to the harassing and annoying calls, nor provided his cellular telephone number to Defendant Cupina or consented to receive calls from Defendant Cupina. Plaintiff also has had no prior business relationship with Defendants. Plaintiff had no reason to be in contact with Defendant Cupina nor has he ever purchased any kind of product or service

that they are selling (i.e. timeshare/vacation club membership). Plaintiff's allegations are sufficient to establish that Defendants used ATDS in sending their prerecorded solicitation messages illegally and in direct violation of the TCPA.

108. In Plaintiff's case, the allegations establish that he did not give prior express consent. He declared that he was "the regular user and subscriber to the cellular telephone number at issue." He also declared that he has "never heard of [Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant] or consented to receive text messages from [Defendant]." As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendants Cupina, Reservation Services Group, LLC, RSI Affinity, LLC and Legacy II Consulting Partners, LLC to send the prerecorded messages, nor to use an ATDS.

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act
### 47 U.S.C. §227(b).

109. Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-108.

110. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(b), and in particular 47

21cv

U.S.C. § 227 (b)(1)(A).

111.   As a result of Defendant's negligent violations of 47 U.S.C. § 227(b),

Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every

violation, pursuant to 47 U.S.C. § 227 (b)(3)(B).

112.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct

in the future.

## SECOND CAUSE OF ACTION

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**

**47 U.S.C. §227(b)**

113.   Plaintiff repeats and incorporates by reference into this cause of action the

allegations set forth above at Paragraphs 1-108.

114.   The foregoing acts and omissions of Defendants, jointly and severally,

constitute numerous and multiple knowing and/or willful violations of the TCPA,

including but not limited to each and every one of the above cited provisions of 47

U.S.C. § 227(b), and in particular 47 U.S.C. § 227 (b)(1)(A).

115.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C.

§227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for

each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §

227(b) )(3)(C).

116.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct

21cv

in the future.

## THIRD CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

117.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-108.

118.   The foregoing acts and omissions of Defendants, jointly and severally, constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one  of the above cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227 (c)(5).

119.   As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff is entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

120.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## FOURTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227 et seq.

121.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-108.

122.   The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited

21cv

to each and every one of the above cited provisions of 47 U.S.C. § 227(c), in particular 47 U.S.C. § 227 (c)(5).

123.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(c)(5).

124.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## FIFTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Cal.Civ.Code §1770(a)(22)(A)

125.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-108.

126.   Defendants use of a pre-recorded message to call Plaintiff is the violation and for each such violation Plaintiff is entitled to punitive damages of three times the statutory loss.

127.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SIXTH AND SEVENTH CAUSES OF ACTION

### Knowing and/or Willful Assault and Battery

128.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-108.

129.   Defendant Cupina physically hit Plaintiff with his fist and physically and

forcefully touched Plaintiff's face, without consent, with intent to cause Plaintiff harm and injury.

130.   Defendant Cupina's acts were knowing, intentional, with malicious and meant to cause Plaintiff physical harm.

131.   Plaintiff apprehended the imminent harmful contact and was unable to stop Defendant Cupina from causing physical harm to him.

132.   Plaintiff was in fear for his safety.

## EIGHTH CAUSE OF ACTION

### Knowing and Willful False Imprisonment

133.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-108.

134.   Defendant Cupina physically confined and restrained Plaintiff to a bounded area when blocking the elevator exit at suite 304 with his body.

135.   Defendant Cupina falsely imprisoned Plaintiff when he told Plaintiff the door was locked and that Plaintiff could not leave the premises.

136.   Defendant Cupina knowingly, intentionally and maliciously confined and restrained Plaintiff to the building at 1111 6th Avenue, in Suite 304, in San Diego, California on July 3, 2021, prohibiting Plaintiff's freedom of movement and escape.

137.   Defendant Cupina further threatened Plaintiff with physical harm and death

21cv

if Plaintiff left suite 304.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against all Defendants for the following:

### FIRST CAUSE OF ACTION

**Negligent Violations of the Telephone Consumer Protection Act**

**47 U.S.C. §227(b)**

- As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and request $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B).
- Any and all other relief that the Court deems just and proper.

### SECOND CAUSE OF ACTION

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**

**47 U.S.C. §227(b)**

- As a result of Defendant's willful and/or knowing violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).
- Any and all other relief that the Court deems just and proper.

### THIRD CAUSE OF ACTION

**Negligent Violations of the Telephone Consumer Protection Act 47 U.S.C. §227(c)**

- As a result of Defendant's negligent violations of 47 U.S.C.

21cv

§227(c)(5), Plaintiff is entitled to and request $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(c)(5).

- Any and all other relief that the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(c)

- As a result of Defendant's willful and/or knowing violations of 47 U.S.C. §227(c)(5), Plaintiff is entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. §227(c)(5).
- Any and all other relief that the Court deems just and proper.

## FIFTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Cal.Civ.Code §1770(a)(22)(A)

- As a result of Defendant's knowing and/or willful violations of California Civil Code §1770(a)(22)(A) and California Civil Code §3294 malicious violation of §1770(a)(22)(A), Plaintiff is entitled to and request treble damages, as provided by statute, up to $24,000, for each and every violation.
- Any and all other relief that the Court deems just and proper.

## SIXTH AND SEVENTH CAUSES OF ACTION

### Knowing and Willful Assault and Battery

- As a result of Defendant's knowing and willful assault and battery upon Plaintiff, Plaintiff is entitled to compensatory damages for both pain and suffering as well a punitive damages in an amount sufficient to punish

21cv

Defendants and set an example for others, but not less than $250,000.

- Any and all other relief that the Court deems just and proper.

## **EIGHTH CAUSE OF ACTION**

### **Knowing and Willful False Imprisonment**

- As a result of Defendant's knowing and willful false imprisonment of Plaintiff, Plaintiff is entitled to compensatory damages for both pain and suffering as well a punitive damages in an amount sufficient to punish Defendants and set an example for others, but not less than $250,000.
- Any and all other relief that the Court deems just and proper.

Respectfully submitted this 6th day of July, 2021.

/S/ Anton Ewing
Anton Ewing, Plaintiff

21cv

# EXHIBIT 'A'

1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11   ANTON EWING, et al., | Case No.:  18cv1455-LAB (JLB) |
| 12                    Plaintiff, | **FINDINGS AND ADMONITION** |
| 13   v. | **TO PLAINTIFF** |
| 14   OASIS MEDIA, LLC, et al., | |
| 15                    Defendant. | |

16

17        After affording Plaintiffs Anton Ewing notice and an opportunity to be heard,

18   the Court found that although he had been repeatedly ordered to obey Civil Local

19   Rule 83.4 (concerning civility and professionalism), he repeatedly violated this rule.

20   Ewing was discourteous and unprofessional when communicating with opposing

21   parties and counsel; he disparaged their intelligence, ethics, and behavior; and he

22   acted in a manner detrimental to the proper functioning of the judicial system.

23        Although Ewing has usually proceeded *pro se*, he is a frequent litigant, and

24   represents to the Court that he has a J.D. from the University of Arizona College

25   of Law. Despite his having legal training, the Court has repeatedly had to remind

26   or order him to familiarize himself with various rules and to obey them.  He is not

27   in the same category as ordinary civil litigants whose unfamiliarity with applicable

28   rules is more excusable.  *See Doe v. City of Los Angeles*, 2013 WL 6019121, at

1  *15 (C.D. Cal., Nov. 13, 2013); *Phillips v. KIRO-TV, Inc.*, 817 F. Supp. 2d 1317,

2  1323 (W.D. Wash., 2011). Although Civil Local Rule 83.4 refers to the duties of

3  attorneys, Ewing must treat it as applicable to him. He is **ORDERED** to read and

4  obey it. He is also **ORDERED** to read and obey Fed. R. Civ. P. 11.

5       Specifically, Ewing is **ORDERED** to be courteous and civil in all

6  communications with opposing counsel, parties, and third parties and to refrain

7  from disparaging their intelligence, ethics, or behavior. This includes making

8  accusations for improper purposes (such as to harass, delay, or embarrass) or

9  making any accusation without first confirming that it is accurate and supported by

10  evidence. *See* Fed. R. Civ. P. 11(b)(1) and (3). In filings in this Court, he is

11  **ORDERED** not to attach or quote from private correspondence or other private

12  communications (including letters, emails, texts, or phone calls) between himself

13  and other parties or counsel, except as specifically authorized under applicable

14  rules or laws, or permitted by judicial officers of the Court. He is **ORDERED** to

15  refrain from making misrepresentations to opposing counsel or parties.

16       Several documents Ewing provided to the Court showed that he misleadingly

17  used the designation "JD" after his name, followed by a disclaimer mentioning

18  privilege and confidentiality, and citing legal authority.[1] At the hearing, Ewing

19  represented to the Court that he had stopped using this designation and would not

20  resume doing so, and the Court takes him at his word. When communicating with

21  counsel, parties, or third parties in connection with litigation, Ewing is **ORDERED**

22

23

---

24  [1] Ewing offered the explanation that this was appropriate for his work as a tax

25  preparer. But the communications had nothing to do with tax preparation. In

26  context, this was likely to mislead recipients, especially non-lawyers, into believing
     he was a lawyer. In one particularly egregious example, he did this when

27  discussing settlement with a non-lawyer. He inaccurately said the case was over
     and had been resolved in his favor, apparently to convince his opponent to make

28  a quick payment.

1  not use the designation "JD" after his name or otherwise suggest that he is an

2  attorney.

3        For a period of 36 months from the date this order is issued, Ewing must file

4  a copy of this order along with any new pro se pleading he files in this District.

5

6        **IT IS SO ORDERED**.

7  Dated:  May 29, 2019

8

9                                          _Larry A. Burns_

                                          Hon. Larry Alan Burns
10                                         Chief United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

18cv1455-LAB (JLB)

# EXHIBIT 'B'

CARLOS L. CAMPOS, City Attorney (SBN 222900)
G. HENRY WELLES (SBN 157193)
BEST BEST & KRIEGER LLP
74-760 Highway 111, Suite 200
Indian Wells, CA  92210
Telephone: (760) 568-2611
Telecopier: (760) 340-6698

Attorneys for
THE PEOPLE OF THE STATE OF CALIFORNIA

EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT CODE
SECTION 6103

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

MAY 1 9 2017

C. Martinez

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

THE PEOPLE OF THE STATE OF
CALIFORNIA

                    Plaintiff,

v.

YASO CUPINA, aka JAY CUPINA, as an
individual, and doing business as
COACHELLA WATER AUTHORITY,
and Does 1-10, Inclusive,

                    Defendants

Case No.  PSC 1700901

STIPULATION FOR ENTRY OF FINAL
JUDGMENT AND FINAL JUDGMENT AND
ORDER THEREON

80237.00438\29705048.1

1    This Stipulation for Entry of Final Judgment and Final Judgment ("Final Judgment" is

2  entered into by the Plaintiff, the People of the State of California ("People" or "Plaintiff") and

3  Defendants Yaso Cupina, aka Jay Cupina, as an individual, and doing business as Coachella

4  Water Authority ("Defendants"). For purposes of this Final Judgment, the People and Defendants

5  shall be collectively referred to as "Parties" and individually as "Party". The Parties have

6  stipulated and consented to the entry of this final Judgment prior to the taking of any proof, and

7  without trial or adjudication of fact or law herein.  The Parties have also waived their right to

8  appeal and have agreed to settle the above captioned matter without further litigation except as set

9  forth herein below.

10                                    I.

11                           **INTRODUCTION**

12    This matter arises from the Defendants using the name "Coachella Water Authority" in

13  connection with the mailing and distribution of solicitations, to California consumers, that offer

14  water testing services and offer for sale, lease, or rent, water treatment devices claimed to

15  improve residential water quality.

16    The Coachella Water Authority ("CWA") is a governmental entity created in 2003 by the

17  City of Coachella and the Coachella Redevelopment Agency pursuant to a Government Code

18  section 6502 Joint Exercise of Powers Agreement. The CWA has statutory authority over the

19  supply of water to the City of Coachella including water quality issues. "Coachella Water

20  Authority" is the recognized and actual name of the governmental entity CWA.

21    The Plaintiff contends that the Defendants' use of the exact name of a governmental entity

22  that provides water and water quality services in connection with the Defendants' solicitations for

23  water testing and treatment services and solicitations for sale, lease, or rental of water treatment

24  products implies a governmental connection and is likely to mislead the public. Plaintiff also

25  claims the Defendants misrepresented the nature and efficacy of their water treatment devices, as

26  well as misrepresenting the nature of water quality in the region.

27    The Plaintiff brought suit against the Defendants on February 16, 2017 seeking the

28  following relief.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
POST OFFICE BOX 13650
PALM DESERT, CA 92255-3650
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

80237.00438\29705048.1                                    - 1 -

LAW OFFICES OF
BEST BEST & KRIEGER LLP
POST OFFICE BOX 13650
PALM DESERT, CA 92255-3650
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

A.      That there be entry of a permanent injunction permanently enjoining and restraining the Defendants from using the name "Coachella Water Authority" and/or any similarly confusing name, in any way.

B.      That there be entry of a permanent injunction permanently enjoining and restraining the Defendants from representing, directly or indirectly:

1.      That most water being delivered to American households is below most standards for human use, for reasons including contaminants existing in the water, including Chromium 6 and BPH;

2.      Representing, directly or indirectly, that the public water system that supplies water to the person to whom the Defendants representations are directed is not properly maintained, resulting in contaminated water that is below most standards for human use;

3.      Representing, directly or indirectly, that the water treatment devices that Defendants offer for sale, lease, or rent, remove particular contaminants from water, including Chromium 6;

4.      Representing, directly or indirectly, that there is a relationship between water quality and acute or chronic illness as a scientific certainty, including the representation that BPH is carcinogenic and affects reproductive organs and the thyroid gland.

5.      Representing, directly or indirectly, that the water treatment devices that Defendants offer for sale, lease, or rent, will provide a health benefit, remove particular contaminants, and/or reduce a health risk and/or will solve or contribute to the solution of the problem of substandard water allegedly being delivered.

C.      That the domain name coachellawaterauthority.com be ordered transferred to the governmental entity Coachella Water Authority to prevent use of this name by the Defendants.

///

///

D.      That the fictitious business name registration of the Defendants of the name of the governmental entity "Coachella Water authority" be canceled to prevent use of this name by the Defendants.

E.      That all Defendants be assessed a civil penalty for each violation of Business and Professions Code sections 17533.6, 17500, and 17577.2 in the amount of $2,500 for each violation, in an amount according to proof at trial, but in an amount of not less than $300,000.

The Defendants are aware of this action and the Parties wish to resolve it without further litigation. The People believe that the resolution embodied in this final judgment is fair and reasonable and fulfills the People's enforcement objectives; that the terms of the Final Judgment are appropriate; and that entry of this Final Judgment is in the best interests of the public. This Final Judgement is neither an admission nor a denial regarding any issue of law or fact alleged in the Complaint in this matter or any violation of law.

## FINAL JUDGMENT INCLUDING INJUNCTION
## PURSUANT TO STIPULATION; ORDER

The Parties, after the opportunity for review by their respective counsel, hereby stipulate and consent to the entry of this Final Judgment as set forth below.

A.      **JURISDICTION AND DISMISSAL OF DOE DEFENDANTS**

The Parties stipulate and agree that the Superior Court of California, County of Riverside, Desert Judicial District, has subject matter jurisdiction over the matters alleged in this action and personal jurisdiction over the Parties to this Final Judgment. DOES 1-10 are hereby dismissed from the case.

B.      **INJUNCTION**

The Defendants, and each of them, their successors, agents, representatives, employees, and all other persons that act under, by and through, or on behalf of any of them, or any of them, are permanently enjoined and restrained from:

LAW OFFICES OF
BEST BEST & KRIEGER LLP
POST OFFICE BOX 13650
PALM DESERT, CA 92255-3650
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

STIPULATION FOR ENTRY OF FINAL JUDGMENT AND FINAL JUDGMENT

1.   Using the name "Coachella Water Authority" and/or any similar name, in any way.

2.   Representing, directly or indirectly:

a.   That most water being delivered to American households is below most standards for human use, for reasons including contaminants existing in the water, including Chromium 6 and BPH;

b.   That the public water system that supplies water to the person to whom the Defendants representations are directed is not properly maintained, resulting in contaminated water that is below most standards for human use;

c.   That the water treatment devices that Defendants offer for sale, lease, or rent, remove particular contaminants from water, including Chromium 6;

d.   That there is a relationship between water quality and acute or chronic illness as a scientific certainty, including the representation that BPH is carcinogenic and affects reproductive organs and the thyroid gland; and

e.   That the water treatment devices that Defendants offer for sale, lease, or rent, will provide a health benefit, remove particular contaminants, and/or reduce a health risk and/or will solve or contribute to the solution of the problem of substandard water allegedly being delivered.

**C.   ADDITIONAL RELIEF**

1.   The domain name coachellawaterauthority.com is ordered transferred to the governmental entity Coachella Water Authority forthwith.

2.   The fictitious business name registration of the Defendants of the name of the governmental entity "Coachella Water authority" is ordered cancelled forthwith.

**D.   ENFORCEMENT OF FINAL JUDGMENT AND PENALTIES**

In the event that the People determine that a violation of this Final Judgment and Injunction has occurred, the People will give notice in writing to the Defendants. The Defendants shall, within 30 days of mailing of the Notice, cure the violation. Should Cupina fail to timely

LAW OFFICES OF
BEST BEST & KRIEGER LLP
POST OFFICE BOX 13650
PALM DESERT, CA 92255-3650
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

80237.00438\29705048.1

- 4 -

1   cure the violation, the People may bring an action or proceeding for enforcement of the Injunction

2   and Final Judgment in this matter.

3       **E.**    **NOTICE**

4       All submissions and notices required by this Final Judgment shall be sent to:

5   For the People:

6           Carlos Campos,
            City Attorney for City of Coachella
7           Best Best & Krieger, LLP
            74-760 Highway 111, Suite 200
8           Indian Wells, CA 92210
            (760) 568-2611
9

10  For the Defendants:

11          Christopher Hewitt
            74361 Highway 111, Suite 7
12          Palm Desert, CA 92260
            (760) 459-2438
13

14      Any Party may change its notice name and address by informing the other party in

15  writing, but no change is effective until it is received. All notices and other communications

16  required or permitted under this Final Judgment that are properly addressed as provided in this

17  paragraph are effective upon delivery if delivered personally or by overnight mail, or are effective

18  five (5) days following deposit in the United States mail, postage prepaid, if delivered by mail.

19      **F.**    **EFFECT OF JUDGMENT**

20      Except as expressly provided in this Final Judgment, nothing in this Final Judgment is

21  intended nor shall it be construed to preclude the People, or any state, county, or local agency,

22  department, board or entity, or any CUPA from exercising its authority under any law, statute or

23  regulation.

24      **G.**    **LIABILITY OF PEOPLE**

25      The People shall not be liable for any injury or damage to persons, or property resulting

26  from acts or omissions by Defendants, its directors, officers, employees, agents, representatives or

27  contractors, in carrying out activities pursuant to this Final Judgment, nor shall the People be held

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
POST OFFICE BOX 13850
PALM DESERT, CA 92255-3850
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

1  as a party to or guarantor of any contract entered into by Defendants, its directors, officers,

2  employees, agents, representatives or contractors, in carrying out the requirements of this Final

3  Judgment.

### H.  NO WAIVER OF RIGHT TO ENFORCE

The failure of the People to enforce any provision of this Final Judgment shall neither be deemed a waiver of such provision nor in any way affect the validity of this Final Judgment. The failure of the People to enforce any such provision shall not preclude it from later enforcing the same or any other provision of this Final Judgment. No oral advice, guidance, suggestions or comments by employees or officials of any Party regarding matters covered in this Final Judgment shall be construed to relieve any Party of its obligations under this Final Judgment.

### I.  FUTURE REGULATORY CHANGES

Nothing in this Final Judgment shall excuse Defendants from meeting any more stringent requirements that may be imposed by applicable law or by any changes in the applicable law.

### J.  APPLICATION OF FINAL JUDGMENT

This Final Judgment shall apply to and be binding upon the People and upon Defendants and its successors and assigns.

### K.  AUTHORITY TO ENTER FINAL JUDGMENT

Each signatory to this Final Judgment certifies that he or she is fully authorized by the party he or she represents to enter into this Final Judgment, to execute it on behalf of the party represented and legally to bind that party.

### L.  CONTINUING JURISDICTION

The Parties agree that this Court has jurisdiction to interpret and enforce the Final Judgment. The Court shall retain continuing jurisdiction to enforce the terms of this Final Judgment and to address any other matters arising out of or regarding this Final Judgment.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
POST OFFICE BOX 13650
PALM DESERT, CA 92255-3650
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

80237.00438\29705048.1

- 6 -

STIPULATION FOR ENTRY OF FINAL JUDGMENT AND FINAL JUDGMENT

**M.    ABILITY TO INSPECT AND COPY RECORDS AND DOCUMENTS**

On reasonable notice and subject to all of the defenses Defendants has to requests for documents made by subpoena or other formal legal process or discovery, Defendants shall permit any duly authorized representative of the People to inspect and copy Defendants' records and documents as they deem reasonably necessary to determine whether Defendants is in compliance with the terms of this Final Judgment. Nothing in this paragraph is intended to require access to or production of any documents that are protected from production or disclosure by the attorney-client privilege, attorney work product doctrine or any other applicable privilege afforded to Defendants under applicable law.

**N.    PAYMENT OF LITIGATION EXPENSES AND FEES**

All Parties will pay their own attorney fees, expert witness fees and costs and all other costs of litigation and investigation incurred to date.

**O.    INTERPRETATION**

This Final Judgment was drafted equally by all Parties. The Parties agree that the rule of construction holding that ambiguity is construed against the drafting party shall not apply to the interpretation of this Final Judgment.

**P.    COUNTERPART SIGNATURES**

This Final Judgment may be executed by the Parties in counterpart.

**Q.    ENTRY AFTER NOTICED MOTION**

The Parties seek approval of this Final Judgment on noticed motion and have requested that the Court make a determination that the Final Judgment is fair and in the public interest.

**R.    INTEGRATION**

This Final Judgment constitutes the entire agreement between the Parties and may not be amended or supplemented except as provided for in the Final Judgment. No oral representations have been made or relied upon other than as expressly set forth herein.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
POST OFFICE BOX 13650
PALM DESERT, CA 92255-3650
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

80237.00438\29705048.1

- 7 -

**S.**   **MODIFICATION OF FINAL JUDGMENT**

This Final Judgment may be modified only on noticed motion by a Party with approval of the court, or upon written consent of the Parties and the approval of the court.

**IT IS SO STIPULATED:**

FOR THE PEOPLE

Dated: April 24, 2017

BEST BEST & KRIEGER LLP

By: _____
CARLOS CAMPOS
CITY ATTORNEY FOR
CITY OF COACHELLA

FOR DEFENDANTS

Dated:  April ____, 2017

By: _____
YASO CUPINA aka JAY CUPINA, as an
individual and doing business as
COACHELLA WATER AUTHORITY

REVIEWED AS TO FORM:

Dated:  April 22, 2017

LAW OFFICES OF CHRISTOPHER HEWITT

By: _____
CHRISTOPHER HEWITT
Attorney for
YASO CUPINA aka JAY CUPINA, as an
individual and doing business as
COACHELLA WATER AUTHORITY

**IT IS SO ORDERED:**

Dated: _____5-17-17_____, 2017

_____
JUDGE OF THE SUPERIOR COURT

80237.00438\29705048.1                                    - 8 -

STIPULATION FOR ENTRY OF FINAL JUDGMENT AND FINAL JUDGMENT

LAW OFFICES OF
BEST BEST & KRIEGER LLP
POST OFFICE BOX 13650
PALM DESERT, CA 92255-3650
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

### PROOF OF SERVICE

At the time of service I was over 18 years of age and not a party to this action. My business address 74-760 Highway 111, Suite 200, Indian Wells, California 92210. On May 16, 2017, I served the following document(s):

### STIPULATION FOR ENTRY OF FINAL JUDGMENT AND FINAL JUDGMENT AND ORDER THEREON

☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☒ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed below (specify one):

   ☐ Deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

   ☒ Placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Indian Wells, California.

☐ **By personal service.** At _____ a.m./p.m., I personally delivered the documents to the persons at the addresses listed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an Individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a professional messenger service for service. A Declaration of Messenger is attached.

☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

80237.00438\29734544.1

- 1 -

LAW OFFICES OF
BEST BEST & KRIEGER LLLP
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

☒ **By e-mail or electronic transmission.** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Christopher Hewitt, Esq.
Law Office of Christopher Hewitt
74361 Highway 111, Suite 7
Palm Desert, CA 92260

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 16, 2017, at Indian Wells, California.

Sally Melgarejo

LAW OFFICES OF
BEST BEST & KRIEGER LLP
74-760 HIGHWAY 111, SUITE 200
INDIAN WELLS, CALIFORNIA 92210

80237.00438\29734544.1

- 2 -

# EXHIBIT 'C'

MEMBERSHIP TYPE: *VIP GOLD*

NUMBER OF ANNUAL CONDO WEEKS: *9*

## RESERVATION SERVICES MEMBER AGREEMENT
### Dream Destinations & Azul Destinations

THIS RESERVATION SERVICES MEMBER AGREEMENT (hereinafter "Agreement") is made and entered into on the _____ day of _____, 2021 ("Effective Date") by and between Dream Destinations & Azul Destinations, a California Company, whose address is 1111 Sixth Avenue #304, San Diego, CA 92101 (hereinafter "Licensor") and the Member(s) identified below.

### 1. Member(s) Information

| | N/A | | N/A |
|---|---|---|---|
| Name | Social Security Number | Name | Social Security Number |
| Street Address | City | State | Zip |
| Telephone (cell) | (home) | (work) | E-mail Address |

**2. Purchase Price and Grant of Member**. For and in consideration of your payment of $_____ ("**Purchase Price**") to Licensor or its designee/assignee, Licensor hereby sells and grants to you, and you hereby purchase and accept a non-exclusive Reservation Services Member (as described herein, your "Member") relating to the **Dream Destinations & Azul Destinations** travel services Network (the "Network"), subject to and in accordance with the Terms & Conditions set forth herein and in the other Network Materials.

PURCHASE TERMS

| | |
|---|---|
| 1. Purchase Price | $_____ |
| 2. Down Payment | $_____ |
| 3. Total Down Payment (Add lines 2 and 3) | $_____ |
| 4. Initial Deposit Received (CK, MC/VISA, AMEX, DISC) | $_____ |

You agree to pay the Purchase Price to Licensor or its designee/assignee pursuant to one of the following payment options:
☐ **Cash/Check Option.** By checking this box and signing below, You agree to pay the purchase price by cash or check to Licensor or its designee/assignee.
☐ **Credit Card Option.** By checking this box and signing below, You agree to pay the Purchase Price to Licensor or its designee/assignee by credit card and You authorize Licensor or its designee/assignee to charge the Purchase Price to your credit card identified below:

    ☐ Visa ☐ MasterCard ☐ Amex
    Name on Card: _____
    Card Number: _____
    Expiration Date: _____/_____ CVV: _____
    Billing address (if different from above): _____

**Member Renewal Fee.** In addition to the Purchase price, Member(s) agrees to pay an annual Member Renewal Fee for an additional term beginning twelve (12) months from the date of execution of this Member Agreement to the Network Administrator (as defined herein), currently established at $149.00, subject to discount for Member(s) who participate in the Automatic Payment Program. Member Renewal Fees are subject to change in accordance with the attached Terms and Conditions. Member(s) will, on an annual basis thereafter, receive a notice (the "Annual Renewal Statement") alerting

them to the pending expiration of their Reservation Services Member and the required payment of the Member Renewal Fee owed as outlined below. Member(s) who provide their e-mail address above will receive the Annual Renewal Statement electronically.

**Annual Billing of Member Renewal Fee:**

☐ By checking this box, I/we elect to receive Annual Billing of the Member Renewal Fee and understand that I/we Will NOT Receive the Fifty Dollar ($50.00) Discount off the Member Renewal Fee applicable to the Automatic Payment Program.

By execution herein below, Purchaser acknowledges and agrees that this Agreement is subject to all the terms & conditions set forth herein and in numbered paragraphs and any addendums, exhibits, and schedules as may be attached hereto, all of which terms & conditions are incorporated herein by reference. By signing below, Purchaser acknowledges having read all paragraphs/addendums, exhibits, and schedules as may be attached hereto and acknowledges receipt of this Agreement. Purchaser should not rely upon any representations that are not included in this Agreement or in the documents referred to herein.

Purchaser's Right of Cancellation:

You may cancel this Agreement, without penalty or obligation at any time prior to midnight of the second (2nd) business day from your execution of this agreement. To cancel this agreement, you must notify Licensor in writing of your intent to cancel. Your notice of cancellation shall be effective upon the date sent and shall be sent to 1111 Sixth Avenue #304, San Diego, CA 92101.

IN WITNESS WHEREOF, this Agreement has been executed on the date first set forth above.

**MEMBER(S)**

Member's Name _____

Member's Name _____

**LICENSOR:**

**Dream Destinations & Azul Destinations**
**California Company**
**By:** _____

RESERVATION SERVICES MEMBER AGREEMENT
**Dream Destinations & Azul Destinations**

ACKNOWLEDGMENTS & SUMMARY OF TERMS & CONDITIONS

These Acknowledgements and Summary of Terms & Conditions constitute a part of the Dream Destinations & Azul Destinations  Reservation Member Agreement. By initialing and signing below, You, the undersigned Member(s), make the following acknowledgments and representations and agree to the terms & conditions of the Network set forth below and on the Network Website:

____/____ 1. Reservation Services Member and Network Benefits. The Member you are acquiring from Licensor entitles you to receive annually travel benefits and other related services and privileges available in connection with the Network (collectively, the "Network Benefits"). You are initially entitled to receive the Network Benefits on a non-exclusive basis for the one (1) year Initial Member Term, and you have the option to renew your Member, so long as the Network Benefits are offered, for subsequent one (1) year Member Terms as herein provided. Should you fail to submit the Member Renewal Fee and applicable documentation to Network Administrator prior to the expiration of any Member Term, your Member may be suspended or terminated as further provided on the Network Website. Benefits are further described in and are subject to this Agreement and the terms & conditions set forth on the "Network Website" AzulDestinations.fun and in such other written materials as may be provided to you, as may be updated by Licensor from time to time, all of which shall be deemed to be incorporated herein (collectively "Network Materials"). Your participation in the Network and receipt of Network Benefits is subject to full compliance with all terms & conditions of participation as set forth in the Network Materials. You acknowledge and agree that you have received and reviewed all materials and information necessary to use and enjoy your Member and the Network Benefits (including, specifically, receiving access to the Network Website).

____/____ 2. Network Benefits. The Network Benefits include the right of you and your immediate family, subject to all Network Materials, to request and receive (a) on an annual basis, access to Network prices for reservations for resort condominiums ("Resort Condo Weeks"), hotel accommodations ("Hotel Rentals"), and cruises and other packaged vacations ("Getaways Programs"); (b) discounts on golf, restaurants, and other retail/leisure establishments; (c) 24 hour access to the Network Website and access to personal travel and reservation specialists for travel/transportation needs; and (d) other vacation related services/benefits as may be made available from time to time. A complete description of current Network Benefits is set forth on the Network Website. Network Benefits may be changed from time to time and neither Licensor nor Network Administrator make any guaranty or assurance as to the continued availability of any specific Network Benefit.

____/____ 3. Reservations. Reservation requests may be made via the Network Website or by calling the Reservation Center at 888-468-0236 and must be in accordance with the current "Reservation Policies" posted on the Network Website, as amended from time to time by Network Administrator in its sole discretion. All reservations are (i) satisfied on a first come, first serve, space available basis and (ii) subject to availability, and there is no guarantee that you will be able to obtain any specific accommodations during any specific time period. You are advised to be flexible in your travel plans in order to obtain desired reservations, and to make requests at least 90 days in advance of the desired travel date. Once confirmed by Network Administrator, all reservations are final and may not be cancelled. Reservations are for your personal use only and may not be rented, sold or otherwise transferred to any third party. Reservations do not include other fees and/or charges as may be imposed by the various product and service providers, or other items of a personal nature, all of which are the sole responsibility of Members unless specifically included in the reservation or as a Network Benefit. You will receive a Confirmation showing the Resort Name, Location, Date, Unit Size, and Occupancy Limit, which may not be exceeded. You understand that check-in must be made by the person named on the Confirmation and that you and your guests must occupy and use all accommodations in accordance with the rules of the applicable resort.

____/____ 4. Licensor. You have acquired the Member from Dream Destinations & Azul Destinations ("Licensor"). Licensor and its authorized agents, representatives, vendors, successors or assigns may perform Licensor's obligations and exercise its rights hereunder. Licensor's Address: 1111 Sixth Avenue #304, San Diego, CA 92101 - Phone - 844-311-6055 - Email address: DreamAndAzulDestinations@gmail.com .

___/___5. Network Administrator. Licensor has contracted with Reservation Services Group, LLC and RSI Affinity, LLC (collectively d/b/a RSI Vacations, "Network Administrator") to administer the Network and provide/fulfill the Network Benefits. Neither Network Administrator nor any of its officers, directors or shareholders has any interest in or right of control over Licensor. Network Administrator and Licensor are independent, separate and distinct entities and Licensor's offer and sale of the Member is separate and distinct from Network Administrator's administration of the Network and fulfillment of Network Benefits. Network Administrator is not a party to this Agreement and shall have no obligation or liability to you hereunder, except as solely relates to providing fulfillment of the Network Benefits in accordance with the terms of the Network Materials.

___/___6. Payment of Moneys to Network Administrator. All fees as may be due to Network Administrator, including, but not limited to, Member Renewal Fees, Reinstatement Fees, Additional Membere Fees, or Guest Certificate Fees should be directed and made payable to: Reservation Services Group, 150 Governors Square, Peachtree City, GA 30269 Phone Number: 888-468-0236, or such other location as Network Administrator may require.

___/___7. Third Party Vendors, Providers and Suppliers. The Licensor and Network Administrator may contract with 3rd party vendors, providers, and suppliers to provide any of the Network Benefits. All 3rd party suppliers are separate and distinct from, and not agents/employees of, Licensor and Network Administrator and neither Licensor nor the Network Administrator accepts any liability for such suppliers' actions or omissions.

___/___8. Savings Claims and Benefits Providers. All savings claims made by Licensor or Network Administrator in respect to Network Benefits are based on price comparisons of retailers for comparable services at the price at which such products are offered and sold. You acknowledge and agree that you have had the opportunity to examine a list of Network Benefits suppliers and a description of the nature thereof.

___/___9. Subject Matter of Network. The Member is not a timeshare plan and the Member is not a timeshare interest or real estate interest. Your purchase of the Member does not provide you with ownership in or the recurring right to use any specific accommodation or facility. The services to be provided under this Agreement shall commence as of the date of this Agreement and the primary purpose of this Agreement is not the right to purchase or receive goods and services in the future. The Member is not a legal or beneficial interest in Licensor, the Network, Network Administrator or any affiliates thereof or their assets and does not entitle you to any share of income, gain or voting interest.

___/___10. Breach of Terms & Conditions. Your Member may be suspended or terminated by Licensor or Network Administrator if you breach any provision of this Agreement or the Network Materials. Termination, whether caused by breach, your election not to renew your Member or otherwise, does not relieve you of any obligations relating to your Member, and all monies you previously paid will be retained as liquidated damages and not as a penalty.

___/___11. Representations. You represent and agree that (a) you are at least 21 years of age and have the capacity to acquire the Member and receive the Network Benefits; (b) your acquisition of the Member is solely for personal enjoyment, is based upon its value as a vacation/leisure time experience, and is not for investment purposes of acquiring or with an expectation that your Member may be resold for profit; (c) Licensor and/or Network Administrator may, from time to time, change terms & conditions of continued enjoyment of the Member and receipt of Network Benefits, and such changes shall be deemed to be automatically incorporated into and made part of this Agreement; and (f) this Network Materials and other documents expressly referred to herein are the only instruments relating to your Member and you may not rely upon any other representations, oral or written.

___/___12. Applicable Law/Venue/Jurisdiction/Severability. You acknowledge and agree that the Member and this Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of Georgia and that the courts of Fulton County, Georgia, shall be the exclusive venue and jurisdiction for all disputes arising out of this Agreement, to which venue and exclusive personal jurisdiction you hereby consent and subject yourself. Should any part of this Agreement be deemed invalid under applicable law, the remaining parts of this Agreement shall be in full force and effect as though any unenforceable part or parts were not written into this Agreement.

Member: _____          Member: _____

# EXHIBIT 'D'

Azul Destinations.Fun ☰

IT'S TIME TO LIVE A LIFE!

Welcome to Azul Destinations



You've just joined an exclusive club and you're in good company, because over 300,000 other people have made the very same decision.



# A B O U T   U S

AzulDestinations.Fun is a leading travel membership-based and lifestyle benefits club. And membership with us certainly has its privileges. Once you become a member and login to your members-only website you will have access to a world of travel benefits because, after all, 'It's time to Live a Life'. We have access to everything from lavish resorts and condos, to specially negotiated pricing on cruises, excursions and short stays, to the very best prices on over 100,000 hotels worldwide and much more. Our negotiated members-only rates will blow you away. We also keep you up to date on our travel specials that are available only to you through our interactive email campaigns which are designed to let you know when some of the best deals out there come available.

You will be able to book right on the website. You will find savings and deals that you will be surprised even exist. If you don't find what you're looking for or if you need assistance you have access to certified travel professionals that will cater to your travel needs. They live to make your travel dreams come true. As an AzulDestinations.Fun member you will ensure that your family gets to live the good life for years and years to come and you can rest assure that you are getting the best price through our price guarantee. Our certified travel professionals are standing by to help you today. It's time to Live a Life the AzulDestinations.Fun way!

We have financing options available for you to through **Flexxbuy (https://flexxbuy.com/azuldestinations/)**. Simply click the link and complete the application to see what great financing rates you qualify for.

# CONTACT US

YOUR NAME

EMAIL ADDRESS

MEMBER ID

CONTACT PHONE

SUBJECT

MESSAGE

Submit Form

Azul Destinations

1399 Ninth Avenue

San Diego, CA 92101

**yasocupina@gmail.com (mailto:yasocupina@gmail.com)**

760-641-9279

7/3/2021

Welcome to Azul Destinations

© Copyright 2021 Azul Destinations. All rights reserved.

⌃TOP

# EXHIBIT 'E'



# CONGRATULATIONS!!

Name: Anthony & Collette
Appointment Date: 7/3/2021
Appointment Time: 3:15 PM

Thank you for taking the time to visit the DREAM DESTINATIONS Preview. Please allow ninety minutes for our presentation, as it will be well worth it. After your preview you will receive the gift promised. This is our way of saying "thank you" for giving us your time and participation.

## 3D/2N HOTEL ACCOMMODATION + 2 ROUND TRIP AIRLINE TICKETS WITHIN THE 48 STATES IN THE USA INCLUDING OAHO HAWAII
### *AS AN ADDITIONAL BONUS WHEN YOU ARRIVE ON TIME YOU WILL BE RECEIVING A $100 DINING CARD*

**What to expect during your visit:** Friendly faces, world class Amenities, and the most affordable way to travel.
**What not to expect:** Yes, this is a 90-minute presentation, but NOTHING like you have experienced before. We want you to join our Vacation Family, but under no circumstances are you required to purchase. There is **NO PRESSURE** at all!

**Qualifications:**
1. Our experience lasts 90 minutes. Guests must attend for the duration to be eligible for their incentive.
2. If you are married or engaged, you must attend with your significant other.
3. You must have a VALID form of identification.
4. You must bring a major credit or a debit card for cross reference only. (We do not collect or charge you on your card)
5. You must be between the ages of 30-67.
6. You must make minimum of $50,000 a year.
7. Single female must make $40,000 annually
8. Please bring your confirmation letter with you! ☺

**Parking is at your discretion.** 1111 6^(TH) Ave. #304 San Diego CA 92101.
There's a lot of parking around the building.

If for some reason you are having trouble with parking, directions or simply have questions feel free to contact us at:
(p) 760-641-9279        (e)confirmationletter@americasawardcenter.com

Please arrive **5 minutes** prior to your appointment time as you will have to check in at our reception desk.
We look forward to meeting you!

Sincerely,V4U Family

         

#HappyTravels

 Gmail

Stark S <seoresearchdata@gmail.com>

---

## CONFIRMATION LETTER FROM DREAM DESTINATION
2 messages

---

**WELCOME CENTER** <resortscenter@americasawardcenter.com>
To: SEORESEARCHDATA@gmail.com

Thu, Jul 1, 2021 at 6:45 PM

Hi Anthony & Collette,

This document will serve as your invitation. It includes your Confirmation Letter & Driving directions to our Showroom.

Please email me to let us know that you have received it and that everything is clear. Please run through its contents carefully. Attached below is your invitation letter.

Here is our address:  **1111 6th ave #304 San Diego CA 92101**
**Your confirmation code: TBS2019**

Thank you so much and we'll see you here **FRIDAY at 3:15 PM**
**JULY 3, 2021**

**Sincerely,**

# ANDY MORGAN
**CONFIRMATION OFFICER**
**Phone #: 757-656-0684**
**Em: resortscenter@americasawardcenter.com**
CONFIRMATION DEPARTMENT

 twitter

**The information contained in this email may be confidential and/or legally privileged. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this e-mail in error, please contact the sender by reply e-mail destroy all copies of the original message Thank You.**

📄 **ANTHONY & COLLETTE-converted.pdf**
285K

---

**Stark** <seoresearchdata@gmail.com>                    Thu, Jul 1, 2021 at 6:46 PM
To: resortscenter@americasawardcenter.com

ok
[Quoted text hidden]





**California Secretary of State**
Electronic Filing



# LLC Registration – Articles of Organization

| | |
|---|---|
| Entity Name: | **LEGACY II CONSULTING PARTNERS LLC** |
| Entity (File) Number: | 202034210526 |
| File Date: | 12/03/2020 |
| Entity Type: | Domestic LLC |
| Jurisdiction: | California |

Detailed Filing Information

1. Entity Name:

LEGACY II CONSULTING PARTNERS LLC

2. Business Addresses:

   a. Initial Street Address of Designated Office in California:

3400 COTTAGE WAY, STE G2 #4208
SACRAMENTO , California 95825
United States

   b. Initial Mailing Address:

3400 COTTAGE WAY, STE G2 #4208
SACRAMENTO , California 95825
United States

3. Agent for Service of Process:

YASO CUPINA
77871 CHANDLER WAY
PALM DESERT California 92211
United States

4. Management Structure:

All LLC Member(s)

5. Purpose Statement:

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

Electronic Signature:

The organizer affirms the information contained herein is true and correct.

Organizer:

LOVETTE DOBSON

# EXHIBIT 'F'

Official Form 1 (1/08)

| United States Bankruptcy Court<br>**CENTRAL** DISTRICT OF *CALIFORNIA* | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>*CUPINA, YASO* | Name of Joint Debtor (Spouse)(Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>*NONE* | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): *5992* | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all): |

Street Address of Debtor (No. & Street, City, and State):
*44625 Via Venice*
*La Quinta CA*
ZIPCODE *92253*

Street Address of Joint Debtor (No. & Street, City, and State):
ZIPCODE

County of Residence or of the Principal Place of Business: *Riverside*

County of Residence or of the Principal Place of Business:

Mailing Address of Debtor (if different from street address):
*SAME*
ZIPCODE

Mailing Address of Joint Debtor (if different from street address):
ZIPCODE

Location of Principal Assets of Business Debtor
(if different from street address above): *NOT APPLICABLE*
ZIPCODE

**Type of Debtor** (Form of organization)
(Check **one** box.)

☒ Individual (includes Joint Debtors)
See Exhibit D on page 2 of this form.
☐ Corporation (includes LLC and LLP)
☐ Partnership
☐ Other (if debtor is not one of the above entities, check this box and state type of entity below)

**Nature of Business**
(Check **one** box.)

☐ Health Care Business
☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
☐ Railroad
☐ Stockbroker
☐ Commodity Broker
☐ Clearing Bank
☐ Other

**Tax-Exempt Entity**
(Check box, if applicable.)

☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)

☒ Chapter 7
☐ Chapter 9
☐ Chapter 11
☐ Chapter 12
☐ Chapter 13

☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts** (Check one box)

☒ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose"
☐ Debts are primarily business debts.

**Chapter 11 Debtors:**

Check one box:
☐ Debtor is a small business as defined in 11 U.S.C. § 101(51D).
☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.

Check all applicable boxes:
☐ A plan is being filed with this petition
☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Filing Fee** (Check one box)

☒ Full Filing Fee attached
☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Statistical/Administrative Information**

☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

Estimated Number of Creditors

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | More than $1 billion |

Estimated Liabilities

| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,000 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | More than $1 billion |

THIS SPACE IS FOR COURT USE ONLY

FILED
JUN 01 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Official Form 1 (1/08) FORM B1, Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**CUPINA, YASO** |
|---|---|

**All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet)

| Location Where Filed:<br>**NONE** | Case Number: | Date Filed: |
|---|---|---|
| Location Where Filed: | Case Number: | Date Filed: |

**Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor** (If more than one, attach additional sheet)

| Name of Debtor:<br>**NONE** | Case Number: | Date Filed: |
|---|---|---|
| District: | Relationship: | Judge: |

| **Exhibit A**<br>(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under Chapter 11)<br><br>☐ Exhibit A is attached and made a part of this petition | **Exhibit B**<br>(To be completed if debtor is an individual whose debts are primarily consumer debts)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____  5/29/2009<br>Signature of Attorney for Debtor(s)  Date |
|---|---|

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and exhibit C is attached and made a part of this petition.
☒ No

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☒ Exhibit D completed and signed by the debtor is attached and made part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

Page 3

| B 1 (Official Form) 1 (1/08) | |
|---|---|
| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):   CUPINA, YASO |

### Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br><br>☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐ Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached. |
| X ___*(signature)*___<br>Signature of Debtor<br>CUPINA, YASO<br><br>X _____<br>Signature of Joint Debtor<br><br>760/641-9279<br>Telephone Number (If not represented by attorney)<br>May 29, 2009<br>Date | X _____<br>(Signature of Foreign Representative)<br><br>_____<br>(Printed Name of Foreign Representative)<br><br>_____<br>Date |

| Signature of Attorney* | Signature of Non-Attorney Bankruptcy Petition Preparer |
|---|---|
| X ___*(signature)*___<br>Signature of Attorney for Debtor(s)<br>Yaso Cupina, Pro Se<br>Printed Name of Attorney for Debtor(s)<br>Yaso Cupina, Pro Se<br>Firm Name<br>44625 Via Venice<br>Address<br>La Quinta, CA 92253<br><br>760/641-9279<br>Telephone Number<br>May 29, 2009<br>Date<br><br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>Michelle A. Palladine<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br>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<br>Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.)<br>471 E Tahquitz Cyn #215<br>Address<br>Palm Springs, CA 92262<br><br>X ___*(signature)*___<br>May 29, 2009<br>Date<br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual. |
| **Signature of Debtor (Corporation/Partnership)** | |
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>Signature of Authorized Individual<br><br>_____<br>Printed Name of Authorized Individual<br><br>_____<br>Title of Authorized Individual<br><br>_____<br>Date | If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

Superior Court of California, County of Riverside
Register of Actions
www.riverside.courts.ca.gov

INC10011425: YASO CUPINA VS KIM ALEXANDER
Civil
Injunction Prohibiting Harassment - Violence
Palm Springs Courthouse Department PS4
Status: Disposed

| Complaints Request for Orders to Stop Harassment of YASA CUPINA | File Date 12/22/2010 | Disposition Dismissal No ADR - 01/11/11 |
|---|---|---|
| Plaintiff(s) | Defendant(s) | |
| YASA CUPINA          Dismissed | KIM ALEXANDER          Dismissed | |

| Date | Action |
|---|---|
| 12/22/2010 | Request for Orders to Stop Harassment (Violence) filed. |
| 12/22/2010 | Petition and Party Information on Restraining Order Entered. |
| 12/22/2010 | Case Assigned to Commissioner in Department 2J |
| 12/22/2010 | TRO Received and Forwarded to Dept. ELANA |
| 12/22/2010 | Folder Tracking: Dept. 2E |
| 12/22/2010 | Notice of Hearing and Temporary Restraining Order filed by YASA CUPINA is Denied (GRA/DEN); Honorable Judge Dale R Wells |
| 12/22/2010 | Hearing on Order to Show Cause set 1/11/11 at 8:30 in Department 2J |
| 12/22/2010 | SPOKE W/YASO @ 3:02 PM AND ADVISED PACKET IS READY FOR PICK UP |
| 01/03/2011 | Returned mail of CIVIL MINUTE ORDER lodged in file. |
| 01/11/2011 | Legacy Minute Order: Hearing on Order to Show Cause re: Harassment as to KIM ALEXANDER |
| 01/11/2011 | Hearing on Order to Show Cause re: Harassment as to KIM ALEXANDER at 8:30 AM in Department 2J nullHearing Continued (Not Held) to 01/11/11 at 1:30 in Department 3M. Reason for continuance: On Court's Own Motion Notice to be given by clerk. Print Minute Order |
| 01/11/2011 | Legacy Minute Order: Hearing on Order to Show Cause re: Harassment as to KIM ALEXANDER |

Superior Court of California, County of Riverside
Register of Actions
www.riverside.courts.ca.gov

INC10011425: YASO CUPINA VS KIM ALEXANDER
Civil
Injunction Prohibiting Harassment - Violence
Palm Springs Courthouse Department PS4
Status: Disposed

| Date | Action |
|------|--------|
| 01/11/2011 | Hearing on Order to Show Cause re: Harassment as to KIM ALEXANDER at 1:30 PM in Department 3M nullHonorable Judge Steven G. Counelis, Presiding<br>Clerk: L. Hoogendyk<br>Court Reporter: C. Carter<br>At 2:20, the following proceedings were held:<br>No appearance made by or for Yaso Cupina.<br>On Court's Own Motion:<br>Entire action dismissed without prejudice.<br>Notice to be given by clerk.<br>Print Minute Order |
| 01/13/2011 | Folder Tracking: FILED |
| 01/11/2012 | Date to Set OSC re Destruction of File (Dismissal) |
| 07/07/2017 | Non-Filed Document(s); Dates from 01/11/11 to 01/11/11. |
| 07/07/2017 | Non-Filed Document(s) (Confidential); Dates from 01/11/11 to 01/11/11. |

PAGE: 2