Anton Ewing (not an attorney)
3077 B Clairemont Drive #372
San Diego, CA 92117

Plaintiff In *Pro Per*

FILED

JUL 3 0 2021

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# THE UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Anton Ewing,

       Plaintiff,

       vs.

Yaso Cupina, an individual,
*Also known as* Jason Cupina,
*Also known as* Jay Cupina,
*Also known as* Jasminkacu Cupina;
*Also known as* Jaso Cupina,
*Doing business as* Azul Destinations, an
unknown entity;

Reservation Services Group, LLC, a
Florida LLC;

RSI Affinity, LLC, a Nevada LLC;

Legacy II Consulting Partners, LLC, a
California limited liability company,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Case No. 21-cv-1219-WQH JLB

**FIRST AMENDED COMPLAINT**
1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C §227 (b)]
2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)]
3. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 (c)]
4. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)]
5. CIVIL CODE §1770(a)(22)(A)
6. ASSAULT
7. BATTERY
8. FALSE IMPRISONMENT

**JURY TRIAL REQUESTED**

21cv1219

Plaintiff Anton Ewing ("Plaintiff"), an individual, alleges the following based upon personal direct knowledge:

## I.  NATURE OF THE CASE

1.      Defendant Cupina stated that there was a call between Plaintiff and Cupina on July 1, 2021 from 760-641-9279 that lasted approximately 30 seconds at 9:45 PM.  Plaintiff's AT&T phone bill for July 1, 2021 is attached hereto and it does not show any call from Cupina's 760-641-9279 number on July 1, 2021 at or around that time.  It appears that Cupina is making a false declaration about this call. Plaintiff also has no recollection of such a July 1st call from Cupina at 9:45 PM. Plaintiff normally goes to sleep around 8:00 PM each night so it is hard to believe that a call be made at 9:45 PM.   Further, the initial telemarketing call from 619-755-1814 came in to Plaintiff's phone at 6:33PM according to the attached AT&T phone records of Plaintiff.  Perhaps Defendant Cupina is confused about another person that he telemarketed.

2.      Plaintiff's cellphone shows a missed call from Yaso Cupina on July 1, 2021 at 7:45PM to Plaintiff's cellphone number 619-719-9640.  Plaintiff did not talk to Cupina at 7:45 PM and did not talk to Cupina at 9:45 PM on July 1, 2021.  Cupina is making up facts out of thin air.  A Rule 56 motion founded upon lies and perjury is improper.

3.      Pursuant to Penal Code §633.5, Plaintiff recorded a call between Cupina and

PLAINTIFF'S FIRST AMENDED COMPLAINT- 2

Plaintiff that occurred on July 2, 2021. Said call did not disclose any confidential information and there was no reasonable expectation of privacy. Plaintiff reasonably believed that Cupina was engaging in criminal activity at the time. During the July 2, 2021 call that lasted 2 minutes and 35 seconds, Plaintiff never asked about food or the type of food or what kind of food. There was never any mention of any food at all. Again, Cupina is making facts up out of thin air. The call was at 3:11 PM on July 2, 2021, between Cupina and Plaintiff and it was between 619-719-9640 and 760-641-9279, the same number provided in the email from July 1st. The conversation was only about parking downtown at Cupina's office and the correct time of the appointment. Plaintiff provided Cupina with the "reservation number" that was provided in the email. Cupina could not find the appointment and told Plaintiff to come back the next day for the presentation. That was the end of the conversation. The fact that Cupina would lie about this to the Court is shocking.

4.     It appears that Cupina is engaging in distraction and obfuscation by falsely stating to the Court that the conversation had to do with food. Cupina makes this false food[1] allegation repeatedly throughout his entire motion to dismiss.

---

[1] There in fact was no food, never was any food and nobody at any time, including the call center, mentioned any food ever, at all. Why Cupina even mentions food is totally bizarre. Food is not a TCPA defense.

PLAINTIFF'S FIRST AMENDED COMPLAINT- 3

5.      The state law claims are inextricably intertwined with the federal law TCPA violations because the acts all occurred as part of the same transaction or occurrence.  They are all part of the same controversy[2].  But for Plaintiff attending the office presentation (and getting punched and unlawfully restrained), Plaintiff would never have been able to determine Cupina's name as the true perpetrator of the telemarketing campaign.  The state law claims are also not the major issue in this matter.  While shocking and painful, it was just one punch.  It happened in a split second.  The major issues before the Court are how Cupina ran his telemarketing operation and the type of auto dialer used.  Those TCPA issues will require expert witnesses.  Conversely, the punch that Cupina threw was caught on camera.  It is simple to show the video of him punching Plaintiff.  Punching someone in the face is not complicated and not time consuming for a jury.

6.      "Dream Destinations" is not a registered dba or fictitious business name.  At the time of the calls, Plaintiff was unable to determine who was the real party behind each of the telemarketing calls.  As such, and strictly because of this, Plaintiff was forced to attend the office presentation in downtown San Diego in order to ascertain the true and correct name of the proper defendants in this matter.

7.      Defendant Cupina fraudulently asserts to the Court in that he was 1) required

---

[2] It is not as if there was a bar fight three days later at a different location or about a different issue.

PLAINTIFF'S FIRST AMENDED COMPLAINT- 4

to meet and confer and 2) that he provided Plaintiff with sufficient time to respond to his meet and confer demands.  This conduct of Cupina's attorney should not go unnoticed by the Court.  It is dirty and it is wrong.  Mr. Brasher's 7/23 letter[3] did not arrive via US mail to Plaintiff until 7/27.  Mr. Brasher failed to either call or email Plaintiff and yet Mr. Brasher somehow thinks that he can disparage Plaintiff with his commentary in his motion to dismiss.  That is uncalled for conduct and should not be tolerated by the Court.

8.      Mr. Brasher stated that he "…did not receive any response to the 'meet and confer' from Ewing necessitating the filing of this motion."  That statement, when read in the proper light, is unprofessional and deceitful.

9.      Plaintiff called Mr. Brasher on July 28, 2021 but he refused to take the call and his secretary hung up.  Plaintiff dialed 858-404-9800.

10.     Cupina is being sued in his individual capacity because he personal, directly made telemarketing calls to Plaintiff without consent, and Cupina is being sued in his capacity as the responsible superior party for his Legacy II limited liability company's acts and actions.  Further, Cupina is personally liable for the acts of his LLC because he cannot commit the criminal violation of 47 USC §501 and attempt to hide behind his entity.  His entity does not shield him from criminal acts and

---

[3] Pursuant to local rule and chamber rules, no letters to others are to be filed with the court.  See LR 83.9.

thus does not shield him from civil liability for those criminal acts of telemarketing.   *See also* US Senate Bill 1913 which will enhance the criminal penalties to a 3 year felony when signed by the President pursuant to the Do Not Call Act.

11.     Defendant Cupina operates a vacation club/timeshare scam[4] out of his office at 1111 Sixth Avenue, Suite 304, in San Diego, California.  It does not appear that even he knows the name of his own company because sometimes he refers to it as "Dream Destinations" and other times he calls it "Azul Destinations" and still at other times he calls it "Legacy II Consulting" or even "RSI."  This evasiveness is part of his *modus operandi*.  *See also* Cal.Civ.Code §3294.

12.     On July 3, 2021, Defendant Yaso Cupina (aka Jason Cupina, aka Jay Cupina, aka Jasminkacu Cupina, aka Jaso Cupina)[5] physically punched Plaintiff in the face at 1111 Sixth Avenue, Suite 304, in San Diego, California.  This constitutes assault and battery.  Plaintiff is suing Defendant Cupina for assault and battery.  *See also* Cal.Civ.Code §3294.  Plaintiff was unlawfully physically contacted by Cupina and Plaintiff was put in an immediate apprehension of an

---

[4] For example, Cupina states that his club buys Airbnb blocks of time in bulk and gets a huge discount.  But that is not how Airbnb works.  The Coachella Water Authority sued Cupina in 2017 and obtained an injunction against him for making similarly outrageous claims in Riverside Superior Court case number PSC 1700901.

[5] He uses several different names, again, his MO is evasiveness.

imminent battery.

13.     On July 3, 2021, Yaso Cupina physically blocked Plaintiff from attempting to leave by getting into the elevator at the above stated address to exit the premises and Cupina stated "you cannot leave, the doors are locked. You have not stayed the required 90 minutes for the presentation." This constitutes false imprisonment. *See also* Cal.Civ.Code §3294.  Cupina kept shouting "you cannot leave."  Cupina placed his hands on each side of the elevator entrance and stood in front of the elevator with his body[6] blocking the exit while shouting "you cannot leave."  It is all on video.

14.     As the elevator was finally closing, Yaso Cupina shouted "I am going to kill you" and then, mere hours later, Cupina sent a threatening email to Plaintiff stating that he was an "Israeli-Russian" and that there will be "...consequences which you're not able to comprehend yet, so I'll give you 24 hours to respond...." Cupina, in violation of PC §519 and §523, stated, in writing at 9:04 PM on July 3, 2021 (from yasocupina@gmail.com), that he was going to call the "...police on you and they will be calling you. You're going to jail..." unless Plaintiff stop this lawsuit.  Plaintiff, respectfully declines Cupina's extortionate threat, invites him to go ahead and kill Plaintiff and call the police, because this lawsuit is now filed.

---

[6] Cupina is well over six feet tall Russian male approximately 230 lbs.

PLAINTIFF'S FIRST AMENDED COMPLAINT- 7

*See also* Cal.Civ.Code §3294.  Plaintiff will not let this bully get away with his felonious acts that were all recorded on video.

15.    If Cupina thinks that his status as an "Israeli-Russian" or his threat to call the police or his threat to kill Plaintiff is going to stop Plaintiff from suing Cupina for illegal telemarketing, false imprisonment, assault, battery, illegal recording, and invasion of privacy as well as unfair business practices, then he is simply misguided and confused.

16.    A person's status as a vexatious litigant in Superior Court has nothing whatsoever to do with federal court ancillary or supplemental jurisdiction.  Mr. Brasher simple wants to engage in unprofessional and dirty conduct in this case.

17.    There is a video camera recording that proves the above allegations.  The Court and the jury do not have to believe Plaintiff regarding these allegations.  The video speaks for itself.  The jury will be able to hear and see the entire incident for themselves and then decide this case.  A jury trial has been requested.

18.    Defendant Yaso Cupina, through his entities and affiliates, Reservation Services Group, LLC, a Florida LLC,  RSI Affinity, LLC, a Nevada limited liability company and Legacy II Consulting Partners, LLC, a California limited liability company, made telemarketing calls to Plaintiff's DNC registered cell phone, with an ATDS at 6:33 PM on 7/1/2021 from phone number 619-755-1841 to cell phone 619-719-9640 stating, initially through a pre-recorded robotic voice

that required Plaintiff to "press 1" to get to a live human operator.  It is this call that set up the appointment so that Plaintiff could find out who the offending telemarketer was.  This is not the fake call that Cupina alleges in his declaration supposedly at 9:45PM about food.

19.     There was a distinct bubble popping sound at the beginning of the above call.

20.     Cupina also called Plaintiff at 7:45PM on 7/1/2021 from 760-641-9279.

21.     Cupina called Plaintiff at 1:44 PM on 7/1/2021 from 619-719-5194.

22.     Cupina called Plaintiff at 12:52 PM on 7/1/2021 from 559-366-9724.

23.     Cupina called Plaintiff at 10:10 AM on 7/1/2021 from 928-398-3946.

24.     Cupina called Plaintiff at 3:30 PM on 6/30/2021 from 619-719-1974.

25.     Cupina called Plaintiff at 9:18 AM on 6/29/2021 from 618-434-8395.

26.     It appears that Defendant Cupina is continuously spoofing his caller ID in order to evade detection and tracing.  *See also* STIR/SHAKEN effective 7/1/2021.

27.     The recorded voice (i.e. the pre-recorded artificial voice) said "This is Sam calling from Embassy Suites with a free, no obligation travel voucher."

28.     It was not actually "Embassy Suites" as that was just what the recording stated in order to get victims to think they are a legitimate company initially and press "1" to be connected.

29.     Because this is a cell phone case, the <u>landline</u> rules under PC §632, which

require <u>confidential information</u> to be exchanged, does not require confidential

information to have been exchanged because no hard-wired <u>landline</u> phone was

used by Plaintiff and only a <u>cellular</u> phone was used. Only PC §632.7 and §637.2

apply in this matter. PC §632 does not apply because this is not a "<u>landline</u>" case.

That being said, Plaintiff uses his <u>cellular</u> phone for personal, residential, private

family use. PC §632 only applies to <u>landlines</u> while PC §637.2 only applies to

<u>cellular</u> phones.

30.     The exception to illegal recording under PC §633.5 does not protect or apply

to Defendants in this case. Cupina made harassing and seriously annoying calls to

Plaintiff.

31.     47 USC §227(b)(1)(A), which was violated by Cupina, in not one but two

separate and distinct matters: (1) by using an ATDS and (2) by using an artificial

pre-recorded voice. If the Court finds that an ATDS was not properly plead and

proven, then a violation of §227(b)(1)(A) still occurred because the use of a pre-

recorded artificial voice does not require the use of an ATDS. The fact that Cupina

used a pre-recorded message is a violation in and of itself. It does not matter if an

ATDS was or was not used. If the Court finds that there was no ATDS, it does not

affect or effect the outcome of this case.

32.     Moreover, because Cupina called a number (619-719-9640) that was

registered by Plaintiff more than 31 days prior to the first offending call, on

www.donotcall.gov, with the FTC, then Cupina has violated 47 USC §227(c)(5).

*See also* 47 C.F.R. §64.1200(c)(2). The Court does not need to find a violation of the ATDS rules to find a violation of the DNC registry rules. These code sections within the TCPA are two separate and distinct violations.

33.     This is the confirmation of the registration sent directly from the FTC from verify@donotcall.gov:

"*Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 9640 on February 16, 2012. Most telemarketers will be required to stop calling you 31 days from your registration date.*" Plaintiff registered his cell phone nearly a decade ago.

34.     47 C.F.R. §64.1200(c)(2)(ii) requires the phone number to be listed in any consent agreement and signed by the person being called. Cupina has no such consent from Plaintiff. Plaintiff has never consented to be solicited by telephone by Cupina or any of this hired and controlled employees.

35.     Plaintiff has taken extra ordinary steps to give notice to the world that his phone number is not to be called for solicitation purposes. A simple Google search of Plaintiff's phone number yields ample proof of this. The Court is encouraged to Google search both "6197199640" and "(619) 719-9640)."

36.     Yaso Cupina sent Plaintiff an email from

resortscenter@americasawardcenter.com at 6:44 PM on July 1, 2021, with a pdf

attachment that contained the phone number 760-641-9279.  This phone number,

760-641-9279, is the same phone number that Yaso Cupina listed on his Chapter 7

bankruptcy petition filed as case number 09-BK-21838-MJ on June 1, 2009 in the

Central District of California.  *See* page 3 of 53 in 6:09bk21838.  Yaso Cupina is a

properly named defendant in this matter.

37.    California Civil Code §1770(a)(22)(A) provides that the treble damage

award of $1500 for willful violation of the TCPA is again tripled under this state

law.  Thus each call is tripled in its §227(b)(1)(A) violation from $1500 to $4500

and each §227(c)(5) violation is tripled from $1500 to $4500.  Thus, because

Cupina used a pre-recorded message and called a DNC registered phone, and did

all of that willfully, then he is subject to $9,000 in damage violations per call.

Further, the PC §637.2 and §632.7 recording violation for $5000 is tripled under

§1770(a)(22)(A) to $15,000.  *See* Civ. Code §1780(a) regarding punitive damages.

Thus each call made by Cupina carries a $9000 violation under the TCPA and

$15000 under CIPA for a total of $24,000 per call.  This is the law in California

pursuant to the Consumer Legal Remedies Act.  Civil Code §1760 requires the

Court to both liberally construe and liberally apply the CLRA.  There will be 52

billion robo-calls made to Americans this year.  The Court is the only branch of

government that can do anything about this problem.  The US DOJ does not

prosecute TCPA violations.  H.R. 3810, if passed, will make TCPA violations

felonies, and then the DOJ might take notice.  The FCC[7] and FTC do nothing to

enforce the TCPA or stop these 52 billion[8] telemarketing robocalls that we have to

suffer from.  Local police are powerless to enforce the TCPA.  *See also*

Cal.Civ.Code §3294.

38.      The impersonal and generic nature of Defendant's pre-recorded message

demonstrates that Defendant Cupina utilized an ATDS in transmitting the

messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S.

Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined

with the generic, impersonal nature of the text message advertisements and the use

of a short code, support an inference that the text messages were sent using an

ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D.

Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using

ATDS; use of a short code and volume of mass messaging alleged would be

---

[7] https://www.khou.com/article/news/investigations/robocall-fine-history/285-777762bc-429c-4e72-b695-59aeee1b479d

[8] https://www.cnet.com/news/robocalls-are-out-of-control-but-that-could-all-change-today/
https://www.prnewswire.com/news-releases/just-under-4-billion-robocalls-in-may-mark-9-9-monthly-drop-says-youmail-robocall-index-301305216.html

impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; Robbins v. Coca-Cola Co., No. 13- CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

39.     An Automatic Telephone Dialing System, which the statute defines as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers is listed at 47 USC §227(a). *Facebook, Inc vs. Duguid* ends its recent US Supreme Court opinion by stating "We hold that a necessary feature of an autodialer under §227(a)(1)(A) is the capacity to use a random or sequential number generator to… store… phone numbers to be called."

40.     Previously, the 9th Circuit in *Marks* held that if the dialer dials numbers from a stored list, it is considered an ATDS.  Now, Plaintiff must prove the equipment could have done it that way (i.e., the equipment had the capability to randomly or sequentially store or produce numbers.).

41.     The TCPA specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers'

PLAINTIFF'S FIRST AMENDED COMPLAINT- 14

privacy rights to avoid receiving telephone solicitations to which they object." 47 USC §227(c)(1).

42.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific 'do not call systems…)" and "develop proposed regulation to implement the methods and procedure that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

43.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules that every company engaging in telemarketing is required to comply with. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Red. 8752 (Oct. 16, 1992)("TCPA Implementation Order"). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears the ultimate responsibility for any violations."

44.     The FCC confirmed the principle in 2013, when it explained that "a seller… may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Red. 6574 (2013).

45.     The Defendants named in this matter are jointly and severally liable because

they jointly and severally placed the telemarketing calls.  Further they each coordinated and conspired with each other to plan the wording of the written contract that is attached as an exhibit and how they would go about creating the pre-recorded messages and which an automatic dialing machine they would use to carry out the harassing telemarketing campaign.

46.     Plaintiff brings this action seeking damages and any other available legal or equitable remedies resulting from the illegal actions of Cupina and his related entities named herein as co-defendants, in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, 47. U.S.C. § 227 et seq. ("TCPA") and related regulations, specifically the National Do-Not-Call provisions, thereby invading Plaintiff's privacy.  This case involves more than one call in violation of the TCPA.

## II. JURISDICTION & VENUE

47.     Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff, a resident of California, seeks relief from the United States Federal District Court, Southern District of California.  For each TCPA subsection (b and c), Plaintiff also seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when all calls are added up, exceeds the threshold required for federal court jurisdiction.   This is a federal question case.

48.     The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims.  If this were a class action, then complete diversity of citizenship would not be required.  Plaintiff moves the Court for a goodfaith modification of existing law to allow for the more fair and logical minimal diversity of citizenship.  *See*

https://digitalcommons.law.yale.edu/cgi/viewcontent.cgi?article=6043&context=fs s_papers

49.     To the extent that the named defendants are outside of California and formed in another state, with their headquarters in another state, and the amount in controversy is over $75,000, then minimal diversity is present.  As such, the Court has jurisdiction to hear state law claims. *See  Louisville, C. & C. R. Co. v. Letson*, 43 U.S. (2 How.) 497 (1844).

50.     This Court also has federal-question subject matter jurisdiction over the Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

51.     This Court has personal jurisdiction over Defendant Cupina because a substantial part of the wrongful acts alleged in this Complaint were committed in California. For example, Cupina, through his entities as stated above, made illegal telemarketing robocalls to Mr. Ewing, within area code 619, while he was in California.   Cupina has also subjected itself to personal jurisdiction in California

because they are running and abetting said criminal operation.

52.     Venue is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391(b) and because Defendant Cupina does business within the State of California and Plaintiff resides within the County of San Diego.

53.     Defendant Cupina has purposefully directed his activities into California and has thus enjoyed the benefits and protections of California law.

54.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS"); and (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

55.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

56.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

57.     The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings,

calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

58.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

59.     In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

60.     To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

61.     The TCPA regulations promulgated by the FCC define "telemarketing" as

"the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

62.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

63.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

64.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during

the call or in the future. *Id.*

65.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

66.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

67.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

68.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the

privacy and disturb the solitude of their recipients. A plaintiff alleging a violation

under the TCPA 'need not allege any additional harm beyond the one Congress has

identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App.

LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S.

Ct. 1540, 1549 (2016) (emphasis original)).

### III. PARTIES

69.     Plaintiff, Anton Ewing. ("Plaintiff"), is an individual and resident in California.

70.     Defendant Cupina is a robo-dialing telemarketer, and is a "person" as defined by 47 U.S.C. § 153 (39).

71.     RSI Affinity, LLC and the other two LLC's named herein are a "person" as defined by 47 U.S.C. § 153 (39).

72.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.  Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.  Defendants controlled every aspect of its agent's operations including the scripts to be read on each call and the fact that Defendant Cupina required its agent to record each

telemarketing call.  Cupina is and was, at all times relevant to this action, a

knowingly and intentionally authorized and controlled agent of RSI Affinity, LLC

and Reservation Services Group, LLC.

## VI.  ADDITIONAL FACTUAL ALLEGATIONS

73.     Cupina admitted on the phone that he did not have permission or consent to

robodial Plaintiff prior to calling.

74.     Defendant Cupina is being sued for violating 47 USC §227(b)(1)(A), 47

USC §227(c)(5), California Civil Code[9] §1770(a)(22)(A).

75.     Yaso Cupina is an officer of Defendant Legacy II Partners Consulting, LLC.

76.     Yaso Cupina is an owner of Defendants Legacy II Partners Consulting, LLC.

77.     Cupina voluntarily handed Plaintiff a written contract which states, in part:

"Licensor has contracted with Reservation Services Group, LLC and RSI Affinity,

LLC (collectively d/b/a RSI Vacations, "Network Administrator") to administer

the Network and provide/fulfill the Network Benefits."

78.     Anton Ewing owns, answers and controls cell phone number ending in -

9640.

---

[9] Disseminating an unsolicited prerecorded message by telephone without an unrecorded, natural voice first

informing the person answering the telephone of the name of the caller or the organization being represented, and

either the address or the telephone number of the caller, and without obtaining the consent of that person to listen to

the prerecorded message.

79. Defendant has failed to obtain a bond as required of all telemarketing organizations in California.

80. Cupina is illegally doing business in California. His timeshare/vacation clubs presentation is riddled with material false statements of alleged fact.

81. Cupina has failed to register as a telemarketer in California with the California Department of Justice.

82. Defendant Cupina has failed to obtain a telemarketers bond in California as required by the California Department of Justice.

83. Cupina exerts agency type control over their third party lead source for telemarketing leads. Cupina provides the script and exact instructions that must be followed.

84. Upon information and belief, Cupina requires its lead source to ask certain questions of the prospective clients before the lead source can transfer the call to Cupina employees.

85. Upon information and belief, Cupina began harassing Plaintiff on or about June 28, 2021 at which time Plaintiff expressly told Defendant Cupina to stop calling and to send a written copy of its Do Not Call policy. No Defendant has yet sent a written copy of the do not call policy.

86. Calling Plaintiff's cell phone in California prior to 8:00 AM is a violation of the FTC and FCC regulations and therefore a violation of 47 USC §227(c)(5).

87.     Plaintiff did not consent to, nor give permission for, the subsequent calls made by Defendant Cupina to Plaintiff.

88.     Often telemarketers higher controlled third parties to do their initial illegal calling in violation of the TCPA.  The initial lead source always plays coy and will not divulge who they are or who they are working for.  That in and of itself is a violation of the FCC's Telemarketing Sales Rule and actionable under 47 USC §227(c)(5).

89.     Further, consent must be in writing and signed by the person called. Plaintiff did not sign any consent to be called.

90.     The Honorable District Judge Chad F. Kenney stated on May 1, 2019 in case number 18-cv-02071, *Shelton vs. Fast Advance Funding, LLC*: "Well, the only way this, this act is going to get any teeth in it at all is through a serial litigant."

91.     Judge Kenney was referring to the TCPA when he made this above statement on the record.

92.     Yaso Cupina directly called Plaintiff on his DNC registered cell phone in violation of the TCPA.

93.     The TCPA causes of action (47 USC §227(b) and (c)) filed herein for, *inter alia*, illegal telemarketing to Plaintiff's DNC registered cellular phone through the use of an ATDS is expressly alleged against Defendant Cupina.

94.     Yaso Cupina is the agent of Reservation Services Group, LLC and Yaso

Cupina controls the acts and actions of Reservation Services Group, LLC as his alter ego.

95.     Defendant Cupina used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its calls to Plaintiff seeking to solicit its vacation club/timeshare services.

96.     Defendant Cupina contacted or attempted to contact Plaintiff from telephone numbers confirmed to be Defendant's numbers.

97.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

98.     During all relevant times, Defendant Cupina did not possess Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing system or an automatic telephone dialing system or an artificial or prerecorded voice on its cellular telephone pursuant to 47 U.S.C.§227(b)(1)(A).  At no time did Plaintiff provide, give or grant express written permission to be called nor to be robo-dialed by Defendants or its agents.

99.     Further, Plaintiff's cellular telephone number ending in -9640 was added to the National Do-Not-Call Registry on or about February 16, 2012.

100.   Defendants placed multiple calls soliciting its business to Plaintiff on his cellular telephone ending in -9640 in or around June and July 2021.  Plaintiff has experienced this same type and method of telephone calls many times over the past

21cv1219

six months. Only discovery and depositions will force Defendant Cupina and RSI

to turn over the evidence confirming that each vacation club scam call is actually

from the Defendants.

101.   Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2)

as they were attempts to promote or sell Defendant's services.

102.   Plaintiff received numerous solicitation calls from Defendants within a 12-

month period.

103.   Defendants continued to call Plaintiff on its telephone number -9640 in an

attempt to solicit its services and in violation of the National Do-Not-Call

provisions of the TCPA.

104.   Plaintiff was harmed by the acts of Defendants in at least the following

ways: Defendants illegally contacted Plaintiff via his telephone for solicitation

purposes, thereby invading the privacy of said Plaintiff whose telephone number

was on the National Do-Not-Call Registry. Plaintiff was damaged thereby.

105.   Plaintiff is suing as a person that received numerous solicitation calls from

Defendants within a 12-month period, who had not granted Defendants prior

express consent and did not have an established business relationship with

Defendants.

106.   The TCPA provides a private cause of action to persons who receive calls in

violation of § 227(b). 47 U.S.C. § 227(b)(3).

21cv1219

107.    The TCPA makes it unlawful to make telemarketing solicitations to telephone numbers on the National Do Not Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

108.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c). 47 U.S.C. § 227(c)(5).

109.    The term ATDS[10] as used and mentioned herein is as defined by the TCPA and by the 9th Circuit Court of Appeals in the recent *Marks vs. Crunch San Diego, LLC* case.  D.C. No 14-cv-00348 BAS BLM, as modified, in part, by the US Supreme Court in *Facebook*.  Per *Facebook vs. Duguid* "we hold that a necessary feature of an autodialer under §227(a)(1)(A) is the capacity to use a random or sequential number generator to… store… phone numbers to be called."  Plaintiff alleges even if the phone numbers themselves aren't random or sequential (which isn't required because "random or sequential" modifies the verbs store/produce, and not "telephone numbers to be called," *See* also *Gadelhak*), as long as there is some function of a random or sequential number generator being employed by the dialing system, it can still quality as an ATDS, just like SCOTUS mentioned in

---

[10] "we conclude that the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator."

PLAINTIFF'S FIRST AMENDED COMPLAINT- 28

footnote 7.

110.   The court says that autodialers include systems that use random or sequential number generators to order numbers in a list.  Computer programs commonly use sequential number generators to store or pull information from a list, thus it is hard to think of a mass dialing system that would not use a sequential number generator at some point in the program.

111.   Plaintiff alleges that the calls were made with an auto dialer because Plaintiff pleads that the messages were sent *en masse* and there was a distinct bubble popping sound at the beginning of each call.

112.   The TCPA is part of the Communication Act of 1934, as amended, and the Communications Act contains a respondent superior provision.  See 47 USC §217, "the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as that of the person."  This provision applies when "construing and enforcing the provisions of the Communications Act."  *Reynolds Corp. vs. National Operator Services, Inc*, 73 F.Supp.2nd 299, 305 (WDNY 1999).

## V.  STANDING

113.   The court must evaluate lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  However,

because Plaintiff is proceeding pro se, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers" and must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (reaffirming standard for pro se complaints post-*Twombly*). The Ninth Circuit has concluded that the court's treatment of pro se filings after *Twombly* and *Iqbal* remain the same and *pro se* pleadings must continue to be liberally construed. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); see also *McGowan v. Hulick*, 612 F.3d 636, 640-42 (7th Cir. 2010); *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461-62 (5th Cir. 2010); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (noting that even following *Twombly* and *Iqbal*, "we remain obligated to construe a pro se complaint liberally").

114.    Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

-A valid injury in fact;

-which is traceable to the conduct of Defendants;

-and is likely to be redressed by a favorable judicial decision.  See, *Spokeo, Inc. v. Robins*, 578 U.S.____(2016) at 6, and *Lujan v. Defenders of Wildlife*, 504 U.S. 555 at 560.  In order to meet the standard laid out in *Spokeo* and *Lujan*, plaintiffs must clearly allege facts demonstrating all three prongs above.

**The "Injury in Fact" Prong**

115.   Plaintiff's injury in fact, must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo* (Id.). For an injury to be "concrete," it must be a de facto injury, meaning that it actually exists. In the present case, Plaintiff was called on his cellular phone at least seven times by Defendants. In fact, Plaintiff expressly informed Defendant Cupina to cease and desist from all future telemarketing on the very first call. Such calls are a nuisance, an invasion of privacy, and an expense to Plaintiff in multiple ways. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). Defendant's invasion of Plaintiff's right to privacy is further exacerbated by the fact that Plaintiff's phone number, at all times relevant to this litigation, was on the National Do-Not-Call Registry ( hereinafter, "DNC Registry"). As well, Plaintiff had no prior business relationship with any named Defendant prior to receiving the seriously harassing and annoying calls by Cupina. All of Plaintiff's injuries are concrete and de facto. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins,* 135 S.Ct. 1540, *578 U.S. ___ (2016)* at 14. In the instant case, it was Plaintiff's phone that was called and it was Plaintiff who answered the calls. It was Plaintiff's personal privacy and peace that was invaded by both Defendant's persistent phone calls using an ATDS and a pre-recoded message, despite Plaintiff having no prior business relationship with any named Defendant and Plaintiff's

21cv1219

attempt to avoid the damage by registering his number on the DNC Registry.

**The "Traceable to the Conduct of Defendant" Prong**

116.   The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that their injury is traceable to the conduct of Defendant Cupina.  In the instant case, this prong is met by the fact that the calls to Plaintiff's cellular phone and home phone (land line) were placed either by Defendant Cupina directly, or by Defendant Cupina's agent at the express direction and control of Defendant Cupina.   See *Jones v. Royal Admin. Servs., 866 F.3d 1100 (9th Cir. 2017)* ten factor test from the 9th Circuit and Civil code §2307.

**The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong**

117.   The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion. In the present case, Plaintiff's Prayers for Relief includes a request for damages for each call made by Defendants, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.  Furthermore, Plaintiff's Prayers for Relief request injunctive relief to restrain Defendants from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past and prevent further injury in the

future. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 578 U.S. ___ (2016), Plaintiff has standing to sue Defendants on the stated claims.  Reservation Services Group, LLC, RSI Affinity, LLC and Legacy II Consulting Partners, LLC are all vicariously liable for the acts and actions of Cupina and his employees.

118.   "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*. at 1548 (quoting *Lujan*, 504 U.S. at 560).  The Supreme Court noted that concreteness is quite distinct from particularization. *Id.* An injury is "particularized" if it affects "the plaintiff in a personal and individual way." *Id.* In addition, for an injury to be "concrete", it must be "de facto," meaning that it is "real" and not "abstract." *Id.* However, an injury need not be "tangible" in order to be "concrete," and intangible injuries may constitute injury in fact. *Id.* at 1549. In order to determine whether an intangible harm constitutes injury in fact, *Spokeo* provided two factors to be considered: "history and the judgment of Congress." *Id.* at 1549. Specifically, "(1) whether the statutory violation bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' and (2) congressional judgment in establishing the statutory right, including whether the statutory right is substantive or procedural." *Matera v.*

*Google*, No. 15cv 4062-LHK, 2016 WL 5339806, at *9 (N.D. Cal. Sept. 23, 2016). *Spokeo* also held that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Spokeo*, 136 S. Ct. at 1549. In such a case, a plaintiff "need not allege any additional harm beyond the one [the legislature] has identified." *Id.*

119.   Here, Plaintiff alleges that Defendant Cupina contacted him using a "telephone dialing system." This is insufficient standing alone, but as in *Charkchyan* and *Kramer*, Plaintiff alleges sufficient additional facts. First, one of the calls is available to the Court as audio recordings of the robotic voice message that initiated the calls. Second, the calls are solicitation advertisements: they advertise Defendant RSI Affinity's services for which Plaintiff has absolutely not use or interest. Third, Plaintiff declares that he has never heard of Defendant Cupina, visited any location operated by said Defendant prior to the harassing and annoying calls, nor provided his cellular telephone number to Defendant Cupina or consented to receive calls from Defendant Cupina. Plaintiff also has had no prior business relationship with Defendants. Plaintiff had no reason to be in contact with Defendant Cupina nor has he ever purchased any kind of product or service that they are selling (i.e. timeshare/vacation club membership). Plaintiff's allegations are sufficient to establish that Defendants used ATDS in sending their prerecorded solicitation messages illegally and in direct violation of the TCPA.

120.   In Plaintiff's case, the allegations establish that he did not give prior express consent.  He declared that he was "the regular user and subscriber to the cellular telephone number at issue."  He also declared that he has "never heard of [Defendant], visited any location operated by [Defendant], provided [his] cellular telephone number to [Defendant] or consented to receive text messages from [Defendant]."  As in *Charkchyan*, these allegations are sufficient to support Plaintiff's claims that he did not give prior express consent authorizing Defendants Cupina, Reservation Services Group, LLC, RSI Affinity, LLC and Legacy II Consulting Partners, LLC to send the prerecorded messages, nor to use an ATDS.

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(b).

121.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-120.

122.   The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(b), and in particular 47 U.S.C. § 227 (b)(1)(A).

123.   As a result of Defendant's negligent violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every

21cv1219

violation, pursuant to 47 U.S.C. § 227 (b)(3)(B).

124.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

### SECOND CAUSE OF ACTION

~~Knowing and/or Willful Violations of the Telephone Consumer Protection Act~~

### 47 U.S.C. §227(b)

125.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-120.

126.   The foregoing acts and omissions of Defendants, jointly and severally, constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(b), and in particular 47 U.S.C. § 227 (b)(1)(A).

127.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. § 227(b) )(3)(C).

128.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

### THIRD CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act

129.   Plaintiff repeats and incorporates by reference into this cause of action the

21cv1219

allegations set forth above at Paragraphs 1-120.

130.   The foregoing acts and omissions of Defendants, jointly and severally, constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(c), and in particular 47 U.S.C. § 227 (c)(5).

131.   As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff is entitled an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

132.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## FOURTH CAUSE OF ACTION

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act**

**47 U.S.C. §227 et seq.**

133.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-120.

134.   The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227(c), in particular 47 U.S.C. § 227 (c)(5).

135.   As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §

227(c), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(c)(5).

136.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## FIFTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Cal.Civ.Code §1770(a)(22)(A)

137.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-120.

138.   Defendants use of a pre-recorded message to call Plaintiff is the violation and for each such violation Plaintiff is entitled to punitive damages of three times the statutory loss.

139.   Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SIXTH AND SEVENTH CAUSES OF ACTION

### Knowing and/or Willful Assault and Battery

140.   Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1-120.

141.   Defendant Cupina physically hit Plaintiff with his fist and physically and forcefully touched Plaintiff's face, without consent, with intent to cause Plaintiff harm and injury.

142.   Defendant Cupina's acts were knowing, intentional, with malicious and

21cv1219

meant to cause Plaintiff physical harm.

143.    Plaintiff apprehended the imminent harmful contact and was unable to stop

Defendant Cupina from causing physical harm to him.

144.    Plaintiff was in fear for his safety.

## EIGHTH CAUSE OF ACTION

### Knowing and Willful False Imprisonment

145.    Plaintiff repeats and incorporates by reference into this cause of action the

allegations set forth above at Paragraphs 1-120.

146.    Defendant Cupina physically confined and restrained Plaintiff to a bounded

area when blocking the elevator exit at suite 304 with his body.

147.    Defendant Cupina falsely imprisoned Plaintiff when he told Plaintiff the

door was locked and that Plaintiff could not leave the premises.

148.    Defendant Cupina knowingly, intentionally and maliciously confined and

restrained Plaintiff to the building at 1111 6th Avenue, in Suite 304, in San Diego,

California on July 3, 2021, prohibiting Plaintiff's freedom of movement and

escape.

149.    Defendant Cupina further threatened Plaintiff with physical harm and death

if Plaintiff left suite 304.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against all Defendants for the

following:

## **FIRST CAUSE OF ACTION**

### **Negligent Violations of the Telephone Consumer Protection Act**

### **47 U.S.C. §227(b)**

- As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and request $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B).
- Any and all other relief that the Court deems just and proper.

## **SECOND CAUSE OF ACTION**

### **Knowing and/or Willful Violations of the Telephone Consumer Protection Act**

### **47 U.S.C. §227(b)**

- As a result of Defendant's willful and/or knowing violations of 47 U.S.C. §227(b)(1), Plaintiff is entitled to and request treble damages, as provided by statute, up to$1,500, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).
- Any and all other relief that the Court deems just and proper.

## **THIRD CAUSE OF ACTION**

### **Negligent Violations of the Telephone Consumer Protection Act 47 U.S.C. §227(c)**

- As a result of Defendant's negligent violations of 47 U.S.C. §227(c)(5), Plaintiff is entitled to and request $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(c)(5).
- Any and all other relief that the Court deems just and proper.

21cv1219

## FOURTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act

### 47 U.S.C. §227(c)

- As a result of Defendant's willful and/or knowing violations of 47 U.S.C. §227(c)(5), Plaintiff is entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. §227(c)(5).

- Any and all other relief that the Court deems just and proper.

## FIFTH CAUSE OF ACTION

### Knowing and/or Willful Violations of the Cal.Civ.Code §1770(a)(22)(A)

- As a result of Defendant's knowing and/or willful violations of California Civil Code §1770(a)(22)(A) and California Civil Code §3294 malicious violation of §1770(a)(22)(A), Plaintiff is entitled to and request treble damages, as provided by statute, up to $24,000, for each and every violation.

- Any and all other relief that the Court deems just and proper.

## SIXTH AND SEVENTH CAUSES OF ACTION

### Knowing and Willful Assault and Battery

- As a result of Defendant's knowing and willful assault and battery upon Plaintiff, Plaintiff is entitled to compensatory damages for both pain and suffering as well a punitive damages in an amount sufficient to punish Defendants and set an example for others, but not less than $250,000.

- Any and all other relief that the Court deems just and proper.

## **EIGHTH CAUSE OF ACTION**

### **Knowing and Willful False Imprisonment**

- As a result of Defendant's knowing and willful false imprisonment of Plaintiff, Plaintiff is entitled to compensatory damages for both pain and suffering as well a punitive damages in an amount sufficient to punish Defendants and set an example for others, but not less than $250,000.

- Any and all other relief that the Court deems just and proper.

Respectfully submitted this 29th day of July, 2021.

/S/ Anton Ewing
Anton Ewing, Plaintiff

21cv1219

# PROOF OF SERVICE

I, Anton Ewing, hereby declare, depose and state under penalty of perjury under the laws of the United States, that I am over the age of 18 and a pro se Plaintiff in this matter and that I served the forgoing First Amended Complaint Defendants as follows:

On July 29, 2021, by placing a copy of the above in the US Mail, first class, postage prepaid, to:

James S. Brasher 171139
Rowe Mullen LLP
3636 Nobel Drive, Suite 215
San Diego, CA 92122

I have read the above and it is true and correct.

Dated:  July 29, 2021

Anton Ewing

21cv1219